# THE STATE v. JOHN A. STARR, Appellant.

### Division Two, June 20, 1912.

1. **FALSE PRETENSE: Absurd and Irrational Representations.** Whether or not the representations made by defendant to the man from whom he obtained money were absurd and irrational depends upon the character of the representations themselves, the situation and capacity of the victim, and other things. The real question is, whether, under all the circumstances of the case, the victim had reasonable grounds, from his point of view, to believe the representations and to act upon them.

2. ————: ————: **Aged Victim: Alienation Suit.** Where the victim was a retired farmer seventy-eight years of age and had been intimate with a young woman whose husband had sued her for divorce, representations by defendant, who had been his intimate friend for years, that said husband had filed suit against him for $30,000 for alienating his wife's affections, reading to him what purported to be a copy of the petition in that suit, and stating he could compromise the suit for $5000 which resulted in the victim paying to the woman $3000 in defendant's presence, of which the woman kept $1000, and gave $1000 to defendant, and another $1000 to a lawyer, also present, are not so absurd and irrational as would require the court to sustain a demurrer to the evidence, although no such suit had been filed, and the paper read to the victim was an abstract of depositions taken in the divorce suit.

3. ————: ————: **Credulity of Victim: Verifying Representations.** One who deliberately imposes upon another should not be heard to say that his victim was over-credulous and negligent in believing the false representations, nor does the law require the victim to verify such statements though the means of verification are accessible to him.

4. ————: ————: **Conspiracy: Larceny.** Where the victim was given to understand that the payment by him to a woman of three thousand dollars would result in settling a suit by her husband against him for alienating her affections, which representations the victim believed, although no such suit had been filed, and the victim paid the said sum to the woman in the presence of defendant and the lawyer who had worked up the scheme to defraud the victim, and the $3000 was divided equally between the woman, defendant and the lawyer, the three were co-conspirators, and defendant is liable on the theory of con-

spiracy; and their acts were not larceny, but the victim parted both with the possession and title of the money paid to the woman under such circumstances.

5. ————: **Money: Ownership.** Possession of money in the ordinary way, in the absence of proof to the contrary, is sufficient evidence of ownership in the possessor. [Disapproving State v. Roswell, 153 Mo. App. 338.] Besides, proof that the victim procured from a bank upon his check the money which he turned over to one of the conspirators, is evidence that he was the owner, for, when the bank handed him the money, it became his property.

6. ————: **Calculated to Deceive: Question for Court.** In a prosecution for false pretense, it is for the court to determine, as a matter of law, whether the representations made by defendant to the victim were calculated to deceive. That question should not be submitted to the jury.

7. **REPUTATION: Subsequent to Offense: Credibility.** As affecting the credibility of the defendant as a witness, the reputation of defendant for morality up to the time of the trial may be shown, and is not to be confined to time anterior to the offense for which he is on trial.

8. **INSTRUCTIONS: Collateral Matters: Reputation: Credibility: Whether or Not Requested.** As to collateral questions arising in a criminal case the defendant must formulate and ask such instructions as he may be entitled to, and such instructions should embody the principles for which he contends. If improperly framed, the trial court should reframe them, if the principle embodied in them is applicable to the facts. But unless an instruction is asked on a collateral question arising in the case, it is not reversible error to fail to give such an instruction. In this case the defendant did not ask an instruction stating that the evidence relating to defendant's bad reputation could be considered only for the purpose of affecting his credibility, but did request the court "to instruct the jury for what purpose they could consider the evidence as to defendant's reputation and former conviction of selling liquor without a license." *Held*, that, the court is not called upon to decide whether or not it would be reversible error to refuse an instruction limiting such testimony to the credibility of defendant, if one properly or improperly framed had been requested, since the request was not sufficient to require the court to give an instruction on the point; and the question being a collateral one to the issue of defendant's guilt of obtaining money by false pretense, and no instruction on the point, either in proper or improper form, having been asked, the failure of the court to give such an instruction was not reversi-

ble error. The statute requiring the court to instruct the jury upon all questions "necessary for their information in giving their verdict" relates only to essential questions.

9. **APPEAL: Consideration of Every Assignment.** It is not the duty of the appellate court to consider every proposition made upon an appeal. Its first duty is to see that substantial justice is done both to the State and defendant; and next, to discuss, for the benefit of the profession and the guidance of trial courts, material questions of law that arise in the case.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Frank P. Divelbiss* and *James L. Farris* for appellant.

(1) The indictment should have been quashed, because it appears from the face thereof that the alleged false pretenses were so absurd and irrational that no one had a right to rely thereon. State v. Cameron, 117 Mo. 641; State v. Barbee, 136 Mo. 440; State v. Lawrence, 178 Mo. 350; State v. Keyes, 196 Mo. 136; Buckaleu v. State, 11 Tex. App. 352; Com. v. Drew, 19 Pick. 17; Com. v. Norton, 11 Allen, 266; People v. Crissie, 4 Den. (N.Y.) 525. (2) The demurrer should have been sustained because the evidence clearly showed that the prosecuting witness had at hand, at the very time, the means of detecting the falsity of the alleged pretenses. State v. Keyes, 196 Mo. 136; Com. v. Drew, 19 Pick. 17; Com. v. Norton, 11 Allen, 266; People v. Crissie, 4 Den. (N. Y.) 525; State v. Buckaleu, 11 Tex. App. 352; State v. Young, 76 N. C. 258. (3) The demurrer should have also been sustained because, according to the testimony of the State, the defendant could in no event have been guilty of obtaining money under false pretenses, but if guilty of any thing, was guilty of a totally different offense. 2 Bishop's New Criminal Law, 813; State v. Kosky, 191

Mo. 1; People v. DeGroff, 60 Pac. 429; People v. Delbos, 81 Pac. 131; Harris v. State, 81 Ga. 758; Smith v. People, 53 N. Y. 111; Com. v. Lannan, 26 N. E. (Mass.) 858; Crum. v. State, 47 N. E. (Ind.) 833; Towns v. State, 78 N. E. (Ind.) 1012; Welsh v. People, 17 Ill. 339; Stinson v. People, 43 Ill. 397. (4) The demurrer to the evidence should have been sustained because there was no proof as to the ownership of the property alleged to have been received by defendant. The record shows, that it was received at the hands of Robinson, but it is silent as to its ownership. The mere possession by the prosecuting witness would, in a civil proceeding, be prima facie evidence of ownership, but, in a criminal trial, such prima facie evidence is not sufficient to overcome the presumption of innocence, which attends defendant throughout the trial. State v. James, 133 Mo. App. 300; State v. Roswell, 153 Mo. 338; State v. Shelly, 166 Mo. 616. The indictment having alleged that the money obtained from the prosecuting witness was lawful money of the United States the State was bound to prove that fact. This was not done and the demurrer for that reason also should have been sustained. 1 Bishop's New Criminal Proc., 485, 486 and 488; Hamilton v. State, 60 Ind. 193; Lewis v. State, 113 Ind. 59; Williams v. People, 101 Ill. 382; Vale v. People, 161 Ill. 309; Wilburn v. State, 60 Ark. 141; Marshall v. State, 71 Ark. 415; Childers v. State, 16 Tex. App. 524; Coffelt v. State, 27 Tex. App. 608; Early v. State, 56 Tex. Cr. 61; Snelling v. State, 57 Tex. Cr. 416; State v. Phillips, 27 Wash. 364; State v. Smith, 31 Mo. 120; State v. Samuels, 144 Mo. 68; State v. Shapiro, 216 Mo. 359; State v. Roswell, 153 Mo. App. 338. (6) Instruction 2 was also erroneous because it assumed that the prosecuting witness parted not only with the possession but also with the title to the money. The court should have submitted to the jury the question of Robinson's intention as to passing the title as well as possession. Loomis v. People, 67 N. Y. 322;

Smith v. People, 53 N. Y. 111; Kellog v. State, 26 Oh. St. 15; Taylor v. State, 32 Tex. Crim. 110; Wilson v. State, 1 Porter (Ala.), 118.   (7) Instruction 2 is also erroneous in that it fails to require the jury to find the fraudulent purpose for which defendant made the alleged false pretenses. State v. Keyes, 196 Mo. 136. (8)   Instruction 2 only required the jury to find defendant falsely represented that suit had been filed. This standing by itself was insufficient. (9) Whether the alleged pretenses were calculated to deceive the prosecuting witness should have been submitted to the jury; especially since the State tendered that issue by alleging in the indictment that said pretenses, ''were calculated and intended to deceive Silas C. Robinson.'' So, also, should the question have been submitted to the jury as to whether Robinson had at hand, at the time, the means of detecting the falsity of the alleged pretenses.   Com. v. Beckett, 119 Ky. 817; Miller v. State, 79 Ind. 198; Waggoner v. State, 90 Ind. 504; Shaffer v. State, 100 Ind. 365; State v. Burnett, 119 Ind. 392; People v. Dimick, 107 N. Y. 13; Cowan v. People, 14 Ill. 350; State v. Switzer, 63 Ver. 604; State v. Vandimark, 35 Ark. 396; State v. Lynn, 51 Atl. (Del.) 882; State v. Briscoe, 67 Atl. (Del.) 154; Jackson v. People, 126 Ill. 139; Com. v. Drew, 19 Pick. 179; 2 Bish. New. Cr. Law, 239, 415; 1 McClain, Cr. Law, 666. (10) Instruction 4 is misleading and in effect tells the jury that there is sufficient evidence in the case from which they may infer the guilty intent of the defendant. It should also have further required the jury to find that the facts and circumstances tending to prove such intent must be sufficient to satisfy the jury of such intent beyond a reasonable doubt. State v. Keyes, 196 Mo. 146.   (11) Instruction 7 is erroneous because there was no evidence upon which to base the same and for the further reason that it does not properly define corroboration.   State v. Chyo Chiagk, 92 Mo. 395; State v. Spraig, 149 Mo. 425; State v. Mc-

Clain, 159 Mo. 340; State v. Hunter, 181 Mo. 316. (12) Instruction 9 is erroneous because it authorizes a conviction if the prosecuting witness was simply "induced" to pay the money to the defendant. (13) Instruction 12 is correct so far as it goes, but is erroneous in that it fails to tell the jury what is a material fact, but leaves the jury to grope in the dark and determine for itself what are the material facts in a trial for obtaining money under false pretenses. State v. Williams, 30 Mo. 364; State v. Fannin, 158 Mo. 149; State v. Faulkner, 175 Mo. 546. (14) Evidence as to defendant's reputation for morality should have been confined to a period prior to the date of the alleged offense for which he was on trial. State v. Marks, 16 Utah, 204; People v. Brewer, 27 Mich. 134; State v. Kinley, 43 Ia. 294; Wroe v. State, 20 Ohio St. 461; Wharton Crim. Ev. 62, 63. (15) The evidence as to the defendant's conviction of a misdemeanor fourteen years prior to the date of this trial was too remote and should have been excluded. State v. Parker, 96 Mo. 390 State v. Gesell, 124 Mo. 535; Guardian v. King, 98 Ky. 253; Baker v. Com., 106 Ky. 212; People v. Gotschall, 123 Mich. 474; Gardner v. State, 117 S. W. (Tex.) 148. (16) Having erroneously permitted to go to the jury the evidence as to defendant's conviction of a misdemeanor in 1897, the court committed further error by refusing to instruct the jury that that fact could be considered only for the purpose of affecting his credibility. Mahony v. State, 33 Tex. Cr. 388; Wilson v. State, 76 S. W. (Tex. Cr.) 434; Ochsner v. Comm.. 128 Ky. 76; Herron v. People, 62 Pac. (Cal.) 835. (17) The court likewise committed error in refusing to instruct the jury that they should consider the testimony introduced as to defendant's general reputation for morality for the purpose of affecting his credibility only. State v. Broderick, 61 Ver. 420; Williams v. State, 25 Tex. App. 76; Webb v. State, 47 Tex. Cr. 305; Ashcraft v. Comm., 68 S. W. (Ky.)

1847; Ritter v. People, 22 N. E. (Ill.) 605; State v. Wellington, 23 Pac. (Kan.) 156.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State; *Maurice G. Roberts* of counsel.

(1) The false pretenses were not so absurd and irrational that Robinson had no right to rely thereon. State v. Martin, 226 Mo. 539; State v. Keyes, 196 Mo. 136; State v. Hill, 72 Me. 238; Thomas v. People, 113 Ill. 531; State v. Munday, 78 N. C. 460; Watson v. People, 87 N. Y. 566. The indictment sufficiently charges that all the facts were feloniously done. State v. Wilson, 223 Mo. 159; State v. Ferguson, 162 Mo. 668. (2) The evidence did not show the prosecuting witness had the means at hand at the very time of detecting the falsity of the alleged pretenses. State v. Keyes, 196 Mo. 157; Thomas v. Phillips, 112 Ill. 531; State v. McConky, 49 Iowa, 499; State v. Hill, 72 Me. 238. (3) The defendant was not guilty of larceny but of false pretenses, because Robinson intended to part with the ownership as well as the possession of the money. 25 Cyc. 33; 19 Cyc. 408; State v. Kosky, 191 Mo. 1. (4) Ample testimony was introduced to show that Robinson was the owner of the money. Defendant admitted ownership by returning the money to Robinson. 12 Am. & Eng. Ency. Law 828; 19 Cyc. 466; Britt v. State, 9 Humph. (Tenn.) 42; Barton v. People, 135 Ill. 405; Mack v. State, 63 Ala. 138; 8 Ency. Pl. & Prac., 878, note 3. (5) Possession is sufficient evidence of ownership in criminal prosecutions for larceny, false pretense or robbery. The decision of the St. Louis Court of Appeals in State v. James, 133 Mo. App. 300, to the contrary is disapproved by text writers and all the higher courts of other States where the matter has been adjudicated. 4 Wig. on Ev., sec. 2515; People v. Oldham, 111 Cal.

648; State v. Howard, 77 Pac. (Mont.) 54; Howard v. People, 193 Ill. 615; Blanchette v. Com., 32 N. E. (Mass.) 658; Griffith v. State, 72 N. E. (Ind.) 563; State v. Patton, 41 Atl. (Del.) 193; Carl v. State, 28 So. (Ala.) 505; Adkins v. State, 41 S. E. (Ga.) 987; Taylor v. State, 75 S. W. (Tex.) 35; Cook v. State, 97 S. W. (Ark.) 683; Barnes v. People, 18 Ill. 52; State v. Donovan, 121 Mo. 496; Ledbetter v. State, 29 S. W. (Tex.) 1084; 1 Greenleaf on Ev. (15 Ed.), sec. 34; State v. Hobgood, 15 So. (La.) 406; Weeks v. Etter, 81 Mo. 375; Comm. Co. v. Railroad, 87 Mo. App. 330; Miller v. Marks, 20 Mo. App. 369. (6) In an indictment for obtaining money under false pretenses it is sufficient to state the sum of money obtained, and an allegation that the money was lawful money of the United States is immaterial, and if made, need not be proven and may be treated as surplusage. R. S. 1909, secs. 5111 and 5114; People v. Hearne, 26 N. Y. Supp. 806; State v. Meysenberg, 171 Mo. 29; 22 Ency. Plead. & Prac. 557; Travis v. Coms., 96 Ky. 77; Blount v. State, 76 Ga. 17; Pomeroy v. Bomm, 2 Va. Cas. 342. (7) Instruction 2 contained every element of the offense of false pretenses. State v. Bayne, 88 Mo. 610; State v. Sarony, 95 Mo. 349; State v. Keyes, 196 Mo. 136; 7 Ann. Cases, 33. It is not incumbent upon the trial court to place a reasonable doubt clause at the end of every instruction, for it is the law of this State, and always has been, that all instructions given by the court in a given case must be read by the jury and considered together. State v. Walker, 194 Mo. 263; State v. Meals, 184 Mo. 256; State v. Kinder, 184 Mo. 295; State v. Sharp, 183 Mo. 738. (8) Instruction 4 merely told them that direct evidence of intent to defraud was not necessary, but that it might be inferred from facts and circumstances in the case. Such an instruction has often been given and approved. State v. Alexander, 119 Mo. 458; State v. Gullette, 121 Mo. 452; State v. Pratt, 98 Mo. 483;

State v. Jackson, 221 Mo. 509; Patt. Ins., secs. 275 (2), No. 830. (9) The testimony as to defendant's reputation for morality at the trial, and after the offense was committed, was admissible, since the defendant offered himself as a witness. State v. Summers, 143 Mo. 231; Com. v. Hourigan, 89 Ky. 313; State v. Sprague, 64 N. J. L. 419; Renfro v. State, 42 Tex. Cr. 393; Comm. v. Sackett, 22 Pick. 396; State v. Spurling, 118 N. C. 1250; Dollner v. Lintz, 84 N. Y. 669; Pratt v. State, 190 Ohio St. 277; Smith v. Hine, 179 Pa. St. 203; Long v. State, 23 Neb. 33; Lea v. State, 94 Tenn. 495; State v. Forshner, 43 N. H. 89; Fisher v. Conway, 21 Kan. 18; State v. Howard, 9 N. H. 485; 3 Ency. Evidence, 28. (10) The evidence as to the defendant's conviction of a misdemeanor was admissible. The remoteness of the conviction was a matter for the jury to pass upon. R. S. 1909, sec. 6383; State v. Sasseen, 75 Mo. App. 197. (11) Being a collateral matter, the court was not required to instruct the jury as to how they might consider the testimony of defendant's prior conviction and his bad reputation for morality. The defendant did not ask such an instruction. State v. Gatlin, 170 Mo. 371; State v. Melvin, 166 Mo. 565; State v. Thurman, 121 Mo. App. 376; State v. Weather, 202 Mo. 6; State v. Westlake, 159 Mo. 669; State v. Harris, 232 Mo. 317; State v. Lockey, 230 Mo. 720; State v. Hoag, 232 Mo. 308.

FERRISS, J.—Defendant, James McPhetridge and Alice Scheffler were jointly indicted in the Ray County Circuit Court for obtaining money by false pretenses from one Silas Robinson. At the February term, 1911, of said court, a severance having been granted defendant, he was placed on trial upon the first count of said indictment, found guilty, and sentenced to two years in the penitentiary.

It appears from the evidence that the defendant, his co-indictees and Silas Robinson, the party victim-

ized, lived in the town of Hardin, Ray county. Defendant was a druggist; McPhetridge, a lawyer; Alice Scheffler, the wife of one Barney Scheffler; and Robinson, a wealthy farmer, about seventy-eight years of age.

The evidence for the State tends to show that the three defendants in the indictment entered into a conspiracy and agreement to obtain money from Robinson by falsely representing to him that he had been sued by the husband of Alice Scheffler for alienating his wife's affections, and inducing Robinson to pay money in order to effect a settlement of said alleged suit. Pursuant to this conspiracy, on the 31st day of December, 1909, defendant Starr called Robinson into his drug store, took from his pocket a paper which he represented to Robinson was a copy of the petition in such alienation suit, and read what purported to be the contents thereof to the effect that a suit for $30,000 damages had been brought by Barney Scheffler in the Ray Circuit Court against Robinson. He then advised Robinson to compromise said suit, and said that he could have it compromised for $5,000. After some parleying, Robinson agreed to give $3000 for that purpose. On that evening, it being Saturday, Robinson drew his check for $3000, and same was given to McPhetridge to hold until the following Monday morning, at which time Robinson drew $2000 in cash from a Hardin bank, which money was paid over to Mr. Phetridge, together with a check for $1000, the latter to be held until the remaining cash could be procured, and the $3000 check was surrendered. On Monday evening Robinson went to the office of McPhetridge with the remaining $1000, met Mrs. Scheffler there, got from McPhetridge the $2000 which had been given him that morning, and counted out the entire $3000, which he handed to Mrs. Scheffler. Robinson then destroyed the $1000 check. Subsequently this $3000 was equally divided between Starr, McPhetridge and Alice Scheffler.

When the money was paid over, McPhetridge drew up an affidavit which was signed by the woman and turned over to Robinson. This affidavit was to the effect that there had been no improper relations between Robinson and Mrs. Scheffler. Subsequently defendant Starr admitted to two witnesses for the State that he had induced Robinson to part with his money in the manner related, claiming that the paper which he had exhibited to Robinson was represented by McPhetridge to him to be a copy of a petition. As a matter of fact, no suit had been filed against Robinson for alienation. There had been a suit filed by Scheffler against his wife for divorce, and in that suit depositions had been taken connecting her name with Robinson. The evidence shows that there had been improper relations between Robinson and Mrs. Scheffler.

The defendant testified that he acted in good faith throughout the matter, that he believed that a suit had been brought as he had represented to Robinson, and that he was trying to do Robinson a favor.

The State entered a nol. pros. as to McPhetridge, and defendant Starr was alone placed on trial.

Immediately after the payment of the money as above detailed, McPhetridge left the State because of this transaction. He testified for the State at the trial, denied that he had represented to Starr that this paper shown to Robinson was a copy of any petition, and stated that he did not tell Starr that an alienation suit was pending against Robinson, but that he did give Starr a memorandum containing the substance of some depositions taken in the divorce suit.

The defendant, testifying as a witness in his own behalf, admitted on cross-examination that he had been convicted of selling liquor without a license several years ago. Several witnesses also testified for the State that Starr's reputation for morality was bad.

Defendant has filed twenty-two assignments of error. Space will not permit a discussion of all of

them, and we will consider only such as we deem material.

I. It is urged that the indictment is·insufficient, and also that the demurrer to the State's evidence should have been sustained, upon the grounds that the representations charged in the indictment were absurd or irrational, and that Robinson had at the very time the means at hand of detecting their falsity. Whether the representations made by defendant were absurd or irrational depends upon two things. One is the character of the representations themselves, and the other is the situation and capacity of the victim. The real question, is whether, under all the circumstances of the case, Robinson had reasonable grounds, from his point of view, to believe the representations and to act upon them. He was seventy-eight years old, a retired farmer. He had been guilty of criminal intimacy with Mrs. Scheffler. He had unbounded confidence in Starr, with whom he had been more or less intimate for thirty years. The statement that Scheffler had brought suit against him for alienation was one quite likely to be true. That Starr should have a copy of the petition would not to him seem at all unlikely. No reason would appear to him why Starr should attempt to deceive him in the matter, or was engaged in an effort to swindle him out of money. Victims in cases of this character are usually selected because of their credulity and susceptibility to imposition. Nor did the law require Robinson to verify the statements of Starr by communicating with the court to ascertain whether or not a petition had been filed. One who deliberately imposes upon another should not be heard to say that his victim was over-credulous or negligent in believing what he was told. The law measures the responsibility of a defendant in such case not by what would impose upon a man of acumen, or upon one of ordinary ability, but by what was calculated to impose

upon the victim under all the circumstances of the case. This subject received very full discussion in the case of State v. Keyes, 196 Mo. 136, and we need add nothing to what is said in that decision on the subject.

II. It is also urged that defendant was not guilty of obtaining money under false pretenses, but, if guilty at all, was guilty of larceny. This upon the theory that the money was paid over to Starr by Robinson as his agent to be used by Starr to settle the case, and that Robinson parted with the possession but not the title to the money. The trouble with this theory is that the facts do not sustain it. The money was not paid defendant Starr for the purpose of delivering same to Mrs. Scheffler, but was paid to Mrs. Scheffler by Robinson in the office of McPhetridge. Until then the money had been held for Robinson by McPhetridge, who returned it to him, and Robinson himself paid it to Mrs. Scheffler. Robinson parted to her with both the possession and title to the money. Defendant Starr is liable on the theory of conspiracy. Robinson was given to understand by the conspirators that the payment would result in settling a suit which Starr represented to him had been filed by Scheffler against him for alienating the affections of Scheffler's wife, which representation Robinson believed to be true. The offense charged in the indictment was, under the evidence, complete against all three of the defendants.

III. Defendant claims that the demurrer to the evidence should have been sustained because of the failure to prove that the money belonged to Robinson, and we are cited to two cases from the St. Louis Court of Appeals (State v. James, 133 Mo. App. 300, and State v. Roswell, 153 Mo. App. 338) wherein it was held that presumptive ownership of money in one's possession is not sufficient to establish ownership in a criminal case. In the Roswell case the defendant took from the pocket of the prosecutor a pocket-book con-

taining a ten-dollar bill. The prosecution was for stealing the ten-dollar bill. It was held that the proof of ownership was insufficient, there being no affirmative proof that the prosecutor owned the bill, and the fact that it was in his pocket was held to be insufficient evidence of ownership. We cannot agree with the conclusion reached by the Court of Appeals. It is opposed to the universal experience of mankind. In our opinion, the possession of money in the ordinary way, in the absence of any proof to the contrary, is *prima facie* evidence of ownership in the possessor. Furthermore, in this case there is ample evidence that Robinson was the owner of the money which he paid over to Mrs. Scheffler. The evidence shows that he procured it from a bank, and there can be no doubt, from this fact alone, that when the bank handed him the money it became his property. We understand that strict proof is required in criminal cases to overcome the presumption of innocence. The rule, however, does not go to the extent of requiring us to suspend all ordinary functions of the human reason, or to refuse to make deductions and arrive at conclusions which are irresistible.

IV. It is insisted that the court should have submitted to the jury the question whether the representations made were calculated to deceive Robinson. We think not. It is for the court to determine as a matter of law whether the representations are calculated to deceive.

In State v. Keyes, supra, this court says: "In causes for obtaining money by false and fraudulent representations, when the testimony is all in, then it is purely a question of law with the courts as to whether or not the representations indicated by the testimony in the cause fall within the provisions of the statute denouncing the offense, and if they do, then it is the duty of the court to require the jury to find

as a question of fact whether such representations were in fact made with the intent, etc., required by the law.''

. V.  A witness for the State was asked as to his knowledge of the general reputation of the defendant for morality.  Objection was made because the question was not confined to a time prior to the date of the offense on trial.  This objection was overruled.  The court committed no error in its ruling on this question.  The inquiry as to the reputation of the defendant was directed to his credibility as a witness; that is, whether at the time he was testifying he was worthy of belief.  This being the purpose for which the testimony was admitted, it certainly was competent to show the reputation of the defendant in this regard up to the time he appeared as a witness.  It would be illogical to attempt to affect the credibility of a witness on the date he testifies by evidence of his reputation confined to some prior date.  Of course, reputation is not built up in a day, and proof of reputation must necessarily cover a considerable space of time.  We can perceive no reason why that time should not continue up to the very day the witness testifies.  This conclusion is in harmony with the ruling of this court in State v. Summar, 143 Mo. l. c. 230, where we held that ''when a witness is to be impeached the issue is what is his reputation now.''  The rule is stated as follows in 3 Ency. of Ev., p. 28:  ''But the issue raised by evidence of the character of a witness relates to his credibility at the time of testifying, and the testimony should relate to his reputation at that time.''

VI.  On cross-examination, the defendant admitted his conviction, several years before the date of the trial, for selling liquor without a license.  Also several witnesses for the State testified to the bad reputation of defendant.  When the court finished reading its instructions to the jury, the defendant made

the following verbal request: ''Defendant now requests the court to instruct the jury for what purpose they would consider the evidence as to defendant's reputation and former conviction.'' This request was refused, and defendant excepted. An instruction limiting such testimony to the credibility of the defendant was held proper, on objection by the *defendant,* in State v. Weeden, 133 Mo. 84, and again in State v. Heusack, 189 Mo. 312, where it was given by the court. It is also inferentially approved in State v. Furgerson, 162 Mo. 678. We find no case which holds it reversible error to refuse such an instruction. As the record stands, we are not called upon to say whether it would be reversible error to refuse an instruction on this question. For reasons which follow we think there was no proper request by defendant for an instruction on the point.

Under our system of jurisprudence, the court determines the law, and the jury the facts, in a case, and it is the duty of the court to instruct the jury upon the law necessary for their information in passing upon questions of fact. In civil cases, under the statute, section 1987, Revised Statutes 1909, the court is required to give only such instructions as are requested in writing by the parties. [Brown v. Globe Printing Co., 213 Mo. 611.] In criminal cases a different rule prevails. Here there are no written pleadings presenting issues. The charge may involve different grades of crime and punishment which must be defined by the court, and generally the issues of law raised by the evidence need to be explained by the court to the jury for their information and guidance. Beginning with Hardy v. State, 7 Mo. 607 (1842), this court has uniformly held it to be the duty of the trial court to instruct the jury on the law of the case. The Hardy case involved the question of the right of the jury to decide the law as well as the facts. On this point this court said: ''It is the duty of the judge of a criminal

court, as well as of all other courts of record, to instruct the jury in all the law of the case.'' The substance of the ruling was that the court, and not the jury, should decide questions of law. In State v. Matthews, 20 Mo. 55 (1854), a refusal by the trial court to give an instruction offered by the defendant to the effect that intent was essential in the crime of larceny, was held to be error. Here again the court says that it was the duty of the trial court to give such instructions ''as the law of the case required.'' In State v. Schoenwald, 31 Mo. 158, this court approved the refusal of the trial court to instruct for any grade of homicide under first degree murder where the facts did not warrant a lower degree. The court cited and approved the Hardy case as to the duty of the court to instruct on all the law of the case. In State v. Jones, 61 Mo. 232, this court justifies the trial court in refusing certain instructions asked by defendant, because they ''were either faulty, as not containing a true exposition of the law, or else were comments upon the evidence,'' and suggested that upon a retrial the court could, if the case was not fully developed in the instructions asked, of its own motion give proper ones, giving ''all the law which has any bearing upon the facts established by the evidence, and this duty clearly devolved upon the court, if not entirely satisfied with the instructions asked,'' citing the above cases. In State v. Stonum, 62 Mo. 596, the points covered by the refused instructions are not given. No instructions were asked or given. Judge WAGNER cites State v. Matthews, supra, with approval, and says the court should instruct the jury ''as to the law in the case.'' In State v. Branstetter, 65 Mo. 149, the defendant was charged with murder. The court instructed on first and second degree murder. No instruction was asked or given on manslaughter. This court held that an instruction on manslaughter should have been given by

the court of its own motion, and says: "It seems to be the settled law of this State that the court in *criminal cases* commits error if it fails to declare the law to the jury applicable to the case made by the evidence, whether proper instructions or any are asked by the defendant or not." This ruling was upon the ground that manslaughter was made an issue in the case by the evidence. Here we have the first clear-cut declaration by this court that it is the duty of the trial court to instruct, whether requested or not; but the case is dealing with different grades of the crime charged, and cannot be extended beyond the facts in the case, and it is so limited in the subsequent case of State v. Kilgore, 70 Mo. 559. In this latter case the question of the duty of the court to instruct arose not upon a direct issue in the case, but upon a collateral question, namely, the limitation upon certain evidence offered for the purpose of impeachment only. It was urged upon appeal that the court erred in failing to give an instruction on this point, although not requested. This court held that if a proper instruction had been asked, it should have been given, or, "if one objectionable in its phraseology had been asked and refused, the court should have given a proper one on the subject." The court then laid down this general proposition: "As to collateral matters, it is for the respective parties to ask such instructions as they may be entitled to." Referring to the Branstetter case, the court says, by way of criticism and explanation: "In the State v. Branstetter, 65 Mo. 149, it was held to be the duty of the court to declare the law applicable to every crime, or grade of crime, of which, under the evidence, the jury might convict the accused. As to collateral matters, it is for the respective parties to ask such instructions as they may be entitled to. In the Swain case, 68 Mo. 616, a proper instruction on the impeaching evidence was asked and refused. If it had been asked in this case it should have been given, or if one objectionable

in its phraseology had been asked and refused, the court should have given a proper instruction on the subject; but the Branstetter case carries the doctrine far enough, and it cannot be extended without serious detriment to the administration of the criminal law." This citation is quoted with approval in State v. Brooks, 92 Mo. l. c. 587. In this latter case it was urged that the trial court erred in failing to instruct, although not requested, on extrajudicial confessions. Denying this contention, the court quotes at length from, and approves the ruling in, the Kilgore case.

In State v. Lowe, 93 Mo. 570, where the defendant offered an improperly worded instruction on a collateral question concerning insanity, it is said: "If the instruction was not properly worded, it was the duty of the court, under our practice, to give a correct instruction on the point." Further, "I am inclined to think that an instruction embodying the principle evidently intended to be contained in the one asked should have been given."

To the same effect, as to the duty to give proper instructions where those asked are in improper form, are State v. Hickam, 95 Mo. 352; State v. Moore, 160 Mo. 443; State v. Reed, 154 Mo. 122; State v. Hathhorn, 166 Mo. 229; State v. Conway, 241 Mo. 271.

In State v. Taylor, 118 Mo. l. c. 172, speaking of the Brooks case, we said: "The majority of the court held that as to collateral matters defendant must ask the instruction if he desired it."

In State v. McNamara, 100 Mo. 100, the court went so far as to hold that it is not the duty of the trial court to re-form and give an instruction offered in improper form upon a collateral question, even if it contain a principle applicable to the facts. This ruling was disapproved in State v. Clark, 147 Mo. l. c. 38, where the court reaffirms the doctrine that the trial court should correct and give an instruction offered in improper form. But the McNamara case has not been overruled

upon the proposition stated therein, namely: "The law requiring the court to declare the law applicable to the case, whether proper instructions are asked or not, does not comprehend such merely collateral matters."

In State v. Murphy, 118 Mo. l. c. 15, speaking of what was there ruled to be a collateral question, this is said "In the absence of any instructions being asked, it was not reversible error for the court to omit to charge on that phase of the evidence."

In State v. Horn, 115 Mo. l. c. 418, exception was taken to the failure of the trial court to instruct the jury as to the attempted impeachment by the State of several witnesses who testified for the defendant. This court said: "While by section 4208, Revised Statutes 1889, it is made the duty of the trial court to instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving ther verdict, and failure to do so when a defendant has been found guilty shall be good cause for setting aside the verdict, the court is not bound to instruct in regard to matters that are not pertinent to the issues involved."

In State v. Harris, 232 Mo. l. c. 321, we say: "Numerous decisions of this court hold that, in the absence of a request from the defendant, it is not reversible error to fail to instruct upon collateral questions."

In State v. Conway, supra, speaking of the statute which requires the court to instruct the jury upon all questions "necessary for their information in giving their verdict," we say: "That language, fairly construed, does not mean that the court shall instruct upon any and every question, but only such as are necessary and essential to intelligent action by the jury in the trial of the case before them."

State v. Nicholas, 222 Mo. l. c. 434, holds as follows: "It was plainly the duty of the court by its instructions to require the jury to find all the essen-

tial elements of an offense embraced within the charge." In State v. McBroom, 238 Mo. l. c. 499, we say: "In a criminal case every issuable fact necessary to establish the State's case must be submitted to the jury."

Consideration of the foregoing decisions, and others of similar import, discussion of which want of space forbids, shows that from 1842 this court has preserved a clear distinction between questions arising upon the issues, which may be termed essential questions, and those collateral merely. The earlier cases, in which no mention is made of collateral questions, and which say that the court must instruct on the law of the case, relate to essential questions. In Conley v. State, 12 Mo. 462, the trial court refused certain proper instructions on the collateral question of an extrajudicial confession. This court ruled that the instructions were proper, but said: "We do not feel inclined to reverse this case for the court's refusal to give the instructions prayed for by defendant, and if that was the only error we might pass over it." And in State v. Clump, 16 Mo. 385, wherein the trial court refused to instruct that the evidence of verbal confessions should be received with caution, it is said: "This court will not reverse for refusing such instructions in civil or criminal cases."

These cases clearly negative the idea that the court is in duty bound to instruct on *every* question of law which may arise, and which would justify an instruction in proper form. In the recent case of State v. Conway, supra, Kennish, J., has fully and forcefully discussed the law which imposes the duty upon the court to instruct on essential or necessary questions. In that case he makes a distinction between necessary and collateral questions, as indicated by the paragraph quoted above from his opinion.

The propositions established by the decisions are: That it is the duty of the court, whether requested or

not, to instruct on essential questions, so as to properly advise the jury of the issues in the case; that, on collateral questions, it is not the duty of the court to instruct unless the defendant offers an instruction embodying the principle contended for, and if the instruction as offered is not correct in form, the court should frame and give one in proper form.

The conclusion reached above is fortified by the statute law on the subject of instructions in criminal cases. In 1845, the following statute was enacted:

"The court shall not, on the trial of the issue on any indictment, sum up or comment upon the evidence, or charge the jury as to matter of fact, unless requested so to do by the prosecuting attorney, and the defendant or his counsel, but the court may instruct the jury on any point of law arising in the cause, which instructions shall be in writing, unless the prosecuting attorney and the defendant consent to its being given orally." [R. S. 1845, p. 882, Sec. 28.]

This statute has remained in force, without substantial change, and is now section 5244, Revised Statutes 1909. Said statute receives no special mention in the early decisions which, following the Hardy case in the 7th Mo., hold it to be mandatory upon the court to instruct on the law of the case, these decisions, however, as we construe them, limiting the rule to essential questions.

In 1879 a new section in criminal procedure was incorporated in the revision of that year by a revised bill, taking effect November 11, 1879 (Sec. 1908, R. S. 1879), which provides that: "The court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict."

We have pointed out above that prior to this act the court had made a distinction between essential and collateral questions, holding the law to be mandatory only as to the former. The statute of 1879 crystal-

lized the law as already declared by this court. As is said by GANTT, J., in State v. Taylor, 118 Mo. 1. c. 171, ''This section was in spirit the reiteration of a rule announced over and over again by this court, beginning with Hardy v. State, 7 Mo. 608, and extending to the present time.''

This Act of 1879 did not repeal the Act of 1845, which provides that the court ''*may* instruct the jury on any point of law arising in the cause.'' This, as we have shown, was held to be mandatory as to essential questions. Both statutes stand as the law. They must be construed together. The Statute of 1879 is useless and meaningless if it also covers *any* question that may arise. Plainly it carves out of the 1845 statute essential questions, i. e., questions for the information of the jury in giving their verdict, and as to such ''necessary'' questions, the court *must* instruct. Upon other questions—collateral questions—the Statute of 1879 has no force or effect. In the Conway case we have elucidated the law upon the duty of the court to instruct on essential questions. We now hold that as to collateral questions, the parties must formulate and ask such instructions as they may be entitled to, and such instructions should embody the principle for which they contend. If improperly framed, the trial court should correctly reframe them, if the principle embodied is applicable to the facts.

Questions of law arising upon evidence impeaching witnesses are collateral questions. [State v. Kilgore, supra.] In the case at bar the defendant presented no instruction upon this point, but contented himself with a vague verbal request which did not indicate the nature of the instruction desired. At the same time he offered several written instructions on various other questions. We are of the opinion that, under these conditions, the court was not required to formulate an instruction upon the proposition.

VII. Objection is made to the instructions given for the State, and error is assigned because of failure to give certain instructions offered by the defendant. We do not regard it necessary to take these objections up in detail. We have examined with care the instructions given and refused, and have reached the conclusion that on the whole the case was fairly instructed, without reversible error. We do not regard it as being the duty of this court to discuss every proposition made upon an appeal. Our first duty is to see that substantial justice is done both to the State and the defendant. Next, it is our duty to discuss for the benefit of the profession and the guidance of trial courts material questions of law that arise in the case, but rulings of the trial court which are without error and which are clearly within the law, do not require continued rediscussion in this court.

Finding no reversible error, the judgment is affirmed. *Brown, P. J.,* and *Kennish, J.,* concur.