STATE of Missouri, Respondent,

v.

Avery Edward PARKER, Appellant.

No. 46991.

Supreme Court of Missouri,

Division No. 1.

June 8, 1959.

Marvin G. Marshall, St. Louis, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant, Avery Edward Parker, was found guilty of the offense of robbery in the first degree and his punishment was fixed by the jury at imprisonment in the penitentiary for a term of five years. Sections 560.120 and 560.135 (all statutory references are to RSMo 1949, V.A.M.S.). He has appealed from the ensuing judgment.

Mr. Alexander Belko was the proprietor of The Belko Drug Store which was located on the corner of Grand and Meramec in St. Louis, Missouri. On the night of June 12, 1957, Mr. Belko, his wife Charlotte Belko, and a 16-year-old boy, Raymond Rhode, were working in the store. At about 8:20 p. m., two men entered the store. There were no customers present at the time. One of the men, later identified as the defendant, stationed himself near the entrance almost directly in front of Raymond Rhode with his hand in his right coat pocket. The other man, later identified as Orlan Eugene Rose, pointed a gun at Mr. Belko and, in a "very belligerent and threatening manner," told him that it was a holdup. According to the testimony of Mr. Belko, Rose demanded that he place the money on the cigar counter. Belko opened a cash register and threw out 15 one-dollar bills. Rose then demanded "the big stuff, the fives and tens," and Mr. Belko then opened the register and threw out a five and a ten dollar bill (both crisp and new) which was all of the paper money in the register. Rose demanded more money and Belko went to another cash register located at the soda fountain and took out three one-dollar bills and placed them on the counter. He then demanded Mr. Belko's billfold, which was given to him, and when he saw it contained no money he threw it back to Mr. Belko. On two occasions when Belko was slow in carrying out his demands, Rose threatened to shoot him, and on another occasion screamed at Mrs. Belko to "quit looking at me." The men were in the store about five or six minutes, and after obtaining the money Rose demanded that the three persons in the store lie down on the floor and then he and the defendant left the store.

Mr. Belko testified further that as soon as the men had gone he instructed his wife to call the police and he then ran out a side door and saw the men enter an alley; that the men then entered a two-tone gray Nash and turned left on Gasconade Street. Mr. Belko knew from the traffic signals in the area that the car would have to pass the intersection of Dewey and Meramec Streets and he obtained the aid of a passing motorist who drove him immediately to that intersection. They arrived at the intersection at the same time as the Nash and almost collided with that car. Mr. Belko saw that the driver of the car was Rose; "he was so close to me in that car I could have reached out and touched him." Mr. Belko followed the car for a short distance and wrote down what he thought to be the license number and then returned to the drug store where he gave the information to the police. The license number he gave the police was E56–833 which he stated was correct except for the last digit.

At 9:55 p. m. police officer Donald E. Strate saw a two-tone gray 1950 Nash with license No. E56–830 parked in a bus zone and arrested the three occupants thereof

who were the defendant, Orlan Rose, and Glenn Savage. The defendant was immediately identified as a participant in the robbery by Mr. and Mrs. Belko and by Raymond Rhode, all of whom repeated the identification at the trial. Mr. and Mrs. Belko also identified Rose as being the man who had the gun during the robbery.

As soon as the occupants of the automobile were arrested a search was made of the car and a .38-caliber revolver and a box of shells were found under the front seat. The revolver was fully loaded and cocked at the time it was found. At the trial the revolver found in the car was identified by Mr. Belko as the one held by Rose at the time of the holdup. A new ten-dollar bill was found in the glove compartment of the car. Various items of clothing which the witnesses identified as having been worn by Rose and the defendant at the time of the robbery were either being worn at the time these men were arrested or were found in the automobile.

Defendant at the trial testified that he lived in Kansas City; that he, accompanied by Rose and Savage, had left Kansas City shortly after midnight on the morning of June 12 and had driven to St. Louis in an automobile furnished by Rose. He testified that they had spent the day sleeping and driving around in St. Louis and were at the South Side Cafe (3818 S. Broadway, St. Louis) from about 8 p. m. until after 9:30. Telephone records and other evidence indicated that defendant made a long distance call to his mother in Kansas City at 9:30 p. m. He denied that he participated in the Belko robbery and relied upon the testimony that he was in the South Side Cafe at the time of the robbery to establish his defense of alibi.

■ Defendant has filed no brief and we are therefore required to review the assignments in his motion for new trial. One of those assignments is that the court erred in overruling defendant's motion for judgment of acquittal because the evidence showed conclusively that no force or violence was used on the person of Mr. Belko and that he was not in fear of any immediate bodily injury, and another related assignment is that the court erred in failing to give an instruction on the lesser offense of stealing less than $50, which contention is based upon the alleged proof that Mr. Belko was not in fear at the time the money was taken.

The transcript in this case is quite unusual in that it contains the complete testimony of Mr. Belko as it was given on three separate occasions. He, of course, testified fully concerning the details of the case at the trial in the circuit court. At the trial he stated that he was afraid when Rose pointed the gun at him and for that reason gave him the money. Defendant sought to impeach that testimony by obtaining Belko's admission that he had given certain answers to certain questions at the preliminary hearing which indicated that he was not afraid. After those questions and answers were read the State, without objection on the part of defendant, read in evidence all of the testimony given by Belko at the preliminary hearing. Also, during the cross-examination of Mr. Belko, the defendant used certain questions and answers appearing in a deposition of Mr. Belko taken by the defendant on September 21, 1957, in an effort to impeach certain of his testimony. Thereafter, the State, without objection, read the entire deposition into the evidence.

The contentions heretofore mentioned are based upon the following testimony of Mr. Belko given at the preliminary hearing:

"Q. Let me ask you, Mr. Belko, [when] he pointed this gun at you, you were referring to in these conversations, were you in fear of the man? A. When he first entered I was in fear for my wife, the longer he stayed, and the more scared he got, he was shaking like a leaf when he started to leave.

"Q. Then you weren't in fear? A. No, I wasn't in fear at the end, I was almost

convinced he would not shoot me because he said to me, 'I don't want to kill.' * * *

"Q. In other words, even though he had the pistol on you, you weren't scared of it? A. Not towards the end, no, sir.

"Q. At any time, were you personally afraid for yourself? A. No, sir.

"Q. You were not? A. No.

"Q. And of course you weren't afraid, you didn't fear bodily injury to yourself, did you? A. Not from him. No, sir.

"Q. You didn't have fear from the other man that was standing up by the door? A. He created the appearance he was not armed.

"Q. You weren't in fear of the one you call Parker either, were you? A. No."

Later in the preliminary the following question and answer appears:

"By the Court: Q. Mr. Belko, you just testified you were not in fear [of] injury or harm, if that's so, why did you give him the money? A. Your Honor, I seen the gun."

In his deposition, Mr. Belko, when asked whether he experienced fear at the time of the holdup, answered: "Well, I would answer that in this way: At that time I truthfully was in terror for my wife's welfare. And any man facing a man with a gun is going to have some fear. I believe, if I hadn't been afraid, I wouldn't have given the man my money." When pressed to explain his testimony at the preliminary hearing he gave the following additional answers: "Just like I stated, any man, regardless of who he is, even if he is a law enforcement officer, facing a gun he will have a certain amount of fear. * * * I believe I was completely afraid like anybody, irregardless of what I testified at the preliminary hearing. My first thought was to get him out of there before anyone got hurt."

At the trial Mr. Belko testified to the following:

"Q. Mr. Belko, could you—you made an answer to the question there, any man facing a gun would be afraid—in this case, we are concerned with your fear. I want to know if you were afraid? A. In my direct testimony I testified when the men entered I was afraid. I was terrified.

"Q. But that's different to your testimony at the preliminary hearing. A. I was afraid.

"Q. I said, you are saying now you were afraid is different to what you testified to—A. I testified at the preliminary hearing I was afraid when the men entered the store. I was scared—I was scared to death."

■ Section 560.120 provides that "Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person * * * shall be adjudged guilty of robbery in the first degree." As indicated, the statute requires proof of a taking of property by "violence to his person" *or* "by putting him in fear of some immediate injury to his person." The evidence in the instant case does not indicate that any physical force was used by defendant and Rose. However, Mr. Belko specifically testified at the trial that he surrendered the money because of fear of the gun held by Rose. It is therefore obvious that there is no merit in the contention that the court erred in overruling defendant's motion for judgment of acquittal because of failure to prove that Mr. Belko was motivated by fear in turning over the money.

■ A more serious question is presented by the contention that the court erred in failing to instruct upon the lesser offense of "stealing." "The crime of robbery in the first degree includes all the elements of larceny, with the added acts of violence or putting in fear * * *." State v. Weinhardt, 253 Mo. 629, 161 S.W.

1151, 1152. Therefore, if there was substantial evidence that the taking of the money was accomplished without violence or putting in fear it would seem that the court should have given an instruction which would have permitted the jury to find defendant guilty of stealing. State v. Weinhardt, supra; State v. Lasky, Mo. Sup., 133 S.W.2d 334. The matter was called to the attention of the trial court by defendant in his offer of Instruction No. 8 which was refused. That instruction was a converse instruction on the offense of stealing and would not have been proper unless given in conjunction with an instruction which authorized a conviction for that offense.

Under the circumstances outlined, we consider the testimony given by Mr. Belko at the preliminary hearing and in his deposition to be in the case for all purposes. His testimony at the preliminary on the issue of his fear is contradictory and difficult to understand. At first he indicated that he was afraid at the beginning but not at the end because he was *almost* convinced that Rose would not shoot him. Then followed questions and answers to the effect that he was not personally afraid at any time. Thereafter, in answer to a question by the court, he stated that he gave Rose the money because of the gun. That answer would indicate that he feared the gun.

The testimony to the effect that he was not afraid was completely repudiated by Mr. Belko in his deposition and later at the circuit court trial. His testimony that "any man facing a man with a gun is going to have some fear, * * * if I hadn't been afraid I wouldn't have given the man my money," would indicate the normal reaction of every man under the circumstances heretofore detailed. It is completely contrary to the universal experience of all mankind to say that a man would experience no fear when he had a pistol pointed at him in a "very belligerent and threatening manner" for six minutes during a holdup, and that the man with the gun twice threatened to shoot him, and that upon demand he opened two cash registers and handed the gunman $33 (all the paper money contained therein), and also, upon demand, handed over his personal billfold. It is a familiar axiom that "actions speak louder than words." Belko would not have handed Rose the money (under the circumstances outlined) unless he feared the possible consequential injuries in the event he had refused.

We have said that "if the testimony of a witness upon a material issue is inherently impossible, or is so opposed to all reasonable probability as to be manifestly false, the courts are not bound to accept it and will wholly disregard it." Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, 891. After considering certain testimony in the case of State v. Tucker, 232 Mo. 1, 133 S.W. 27, 32, the court concluded that "this is, if there ever was, a case in which a court and jury could say that the statements of the defendant so contradict the physical facts, and his conduct is so unreasonable and inconsistent with the experience of mankind, that the court was not bound to believe him and instruct the jury on his testimony for a less grade of offense."

We have concluded that the testimony of Mr. Belko at the preliminary to the effect that he was not personally afraid at any time is so manifestly contrary to the universal experience of mankind that it resulted from a misunderstanding of the witness or failure to comprehend the true meaning and import of his answers. We accordingly rule that the testimony under consideration will not be accepted as substantial evidence that the taking was accomplished without putting Mr. Belko in fear, and hence the trial court did not err in failing to instruct upon the lesser offense of stealing.

Another assignment in the motion for new trial is that the court erred in refusing to admit defendant's Exhibit M in-

to evidence. Defendant has not seen fit to file that exhibit in this court so the issue is not actually before us for review. However, we gather from the transcript that Exhibit M is a copy of the registration of a 1949 Chevrolet automobile in the name of George F. Rosselli, Kansas City, Missouri, showing the issuance therefor of Missouri license E56–833. The trial court was of the view that the evidence was immaterial. We agree with that conclusion. Mr. Belko testified that the defendant and Rose escaped in a certain Nash car and that the 1950 two-tone gray Nash in which they were subsequently arrested was the same car as the one in which they fled from the scene of the robbery. The ownership of the car was not in issue. In his testimony Mr. Belko admitted that he made a mistake in the last digit when he wrote down the license number of the Nash. Under the circumstances presented, proof of the ownership and description of the car for which license E56–833 was issued would not have tended to prove the innocence of defendant. We rule this point against defendant.

The motion for new trial also contains the contention that the trial court erred in limiting the cross-examination of the police officers concerning license number E56–833. We have carefully searched the cross-examination of the three police officers who testified for the State and do not find any instance in which the court restricted the cross-examination of those officers in regard to said license. There is some indication that the real complaint intended in that assignment was the failure of the court to admit Exhibit M into evidence so that it could have been used in an effort to impeach the testimony of the police officers. However, we can find no testimony by those officers which could have been impeached by the use of Exhibit M. The assignment is without merit.

■■ Assignment No. 5 of the motion for new trial is as follows: "The court erred in overruling defendant's motion for a judgment of acquittal upon paragraph six (6): 'As a matter of law, the testimony of the alleged eyewitnesses is so contradicted and impeached that the evidence introduced by the State is not sufficient or substantial enough to sustain a judgment of conviction on the charge in the information, robbery first degree, by means of a deadly weapon.'" While that assignment is obviously too general to preserve anything for review we observe that our statement of facts will clearly show that there was sufficient substantial evidence to support a conviction of defendant for the offense charged.

■ The sixth assignment in the motion reads as follows: "The court erred in limiting cross-examination by the defense of police officer witness, Donald Strate, by the use of a police report which, if defense would have been permitted, would have impeached the witness upon identification matters, namely clothing and items introduced into evidence as having been removed from the vehicle in which defendant was riding at the time of arrest." The report mentioned was not marked as an exhibit, nor identified, nor offered in evidence, and is not contained in the transcript. We do find the following in the cross-examination of Officer Strate:

"Q. Officer, have you seen a supplemental report number 82,938 on this case concerning what you removed from this automobile in question? A. I couldn't tell you by the number of the report.

"Q. Well, I'll hand you—

"Mr. Brady: Your Honor, I'm going to object to use of any police report in this.

"The Court: Sustained."

Thereafter, out of the hearing of the jury, counsel for defendant stated that he wanted to use the report to impeach the officer. In ruling upon the question the court stated that there was no showing that the officer prepared the report or "that he was the author of or originator of that, and

under the ruling of the case I have cited there is insufficient proof at this time to admit into evidence the police report or any portions of it." Defendant's counsel then made a statement which indicated that he agreed with the ruling of the court and no further effort was made to use the report. The assignment is without merit.

■ On direct examination defendant testified that he had been convicted of a misdemeanor in Kansas City and had served a jail sentence and was at the time of trial on parole from that sentence. These facts were also referred to briefly by the State upon cross-examination. Assignment No. 7 of the motion is a contention that the court erred in not giving an instruction to the effect that evidence of that conviction should be considered by the jury on the question of defendant's credibility only. The defendant offered no such instruction. In view of the fact that the defendant was the first to prove the conviction, it is doubtful that he is in a position to raise this point. However, in any event, the question presented relates to a collateral matter and the court was not required to give such an instruction as a part of the law of the case. Since the defendant did not offer an instruction embodying the principle contended for, the court did not err in failing to give such an instruction. State v. Starr, 244 Mo. 161, 148 S.W. 862; State v. Lee, 361 Mo. 163, 233 S.W.2d 666.

■ Assignment No. 8 is that the court erred in giving Instruction No. 2 (the main instruction) because it required a finding that the taking was "from the presence and possession" of Mr. Belko. It is said that such was not supported by the evidence and did not correctly state the law. The evidence supported the part of the submission complained of and such seems to us to be a proper submission of that element of the case. We are unable to conclude that the instruction was erroneous in the respect complained of.

■ The final assignment reads as follows: "The court erred in giving instruction No. 2(2) in that the elements of the said crime, robbery, first degree, were inadequately instructed upon in that the taking, if any, alleged as felonious was without any 'honest claim to said money' upon the part of the defendant." We are unable to understand the meaning of that assignment. However, it seems to relate in some manner to the alleged inadequacy of the submission of intent. The instruction required a finding that the taking of the money was "with the felonious intent upon the part of said Orlan Eugene Rose and the defendant, Avery Edward Parker, or either of them, at the time to wrongfully take and carry away and convert said sum of money, or any part thereof, fraudulently to the use of either said Orlan Eugene Rose or the defendant, Avery Edward Parker, and to permanently deprive said Alexander Belko of the use of the said money." We have concluded that the quoted portion of the instruction properly included all of the required elements relating to the intent with which the money was taken. State v. Politte, Mo.Sup., 249 S.W.2d 366.

We have examined the record and find no error in regard to the matters not required to be preserved in the motion for new trial. We have concluded that the defendant was afforded a fair trial, and that the judgment should be affirmed. It is so ordered.

HOUSER, C., concurs.

COIL, C., dissents.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.