**STATE of Missouri, Respondent,**

v.

**Ralph BLEWETT, Appellant.**

**No. KCD 26643.**

Missouri Court of Appeals,
Kansas City District.

March 4, 1974.

———◆———

Robert G. Duncan, Kansas City, for appellant.

G. Michael O'Neal, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant appeals from a jury conviction of robbery in the first degree under Section 560.120, RSMo 1969, V.A.M.S.

The State's[9] evidence showed that between 10:30 and 11:00 p. m. on June 29, 1971, two teenagers entered the rear door of the KuKu Hamburger Stand in Kansas City, Missouri. At that time, there were three teenage employees in the restaurant preparing to close for the night. One of the intruders had a sawed-off rifle, and the other grabbed hold of one of the employees named Sidney Joe Robertson. Robertson shouted out the name of Josia Stallings, the manager in charge, and simultaneously the intruders shoved Robertson toward the portion of the restaurant where Stallings was cleaning up the grill. The man with the rifle aimed the rifle at Stallings, ordered him to get down on the floor and told him "not to mess around or he'd shoot me." Stallings immediately did so.

The two intruders then ordered Robertson to go to the cash register and open it. Robertson did so. They then ordered him also to get down on the floor, and the intruders proceeded to take the cash drawer from the register and make an exit out the back door through which they had entered.

The third employee, Gary Cooper, was cleaning up the lobby in the front of the restaurant and noticed Robertson throw himself on the floor. Cooper immediately jumped up on the counter to see what was going on and saw the two robbers running toward the back door. As they were leaving, the shorter of the robbers turned around, giving Cooper a good look at him.

When the police arrived, Cooper stated that he knew the shorter of the two robbers to be the defendant, with whom he had attended Westport High School. Cooper testified that defendant had been in the restaurant late that afternoon during which time he had purchased a taco and had inquired about employment. Cooper

offered to show the officers a picture of defendant in the Westport High School annual, and the next day he did so.

On that same day following the robbery, defendant was placed in a line-up at the police station and Cooper readily identified him as being the shorter of the two robbers. Cooper also made unequivocal identification of the defendant in court.

Defendant introduced an alibi defense. Defendant himself testified that he had been in the KuKu Hamburger Stand inquiring of Cooper about employment sometime during that week, but he believed that it was a day other than that of the robbery. Defendant steadfastly denied having been in the hamburger stand at all at the time of the robbery, testifying along with his witnesses that he had spent the whole evening at the apartment house of his step-brother.

Defendant assigns as error: (1) that the trial court erred in failing to instruct on the offense of stealing; and (2) that the trial court erred in failing to direct a verdict because there was no substantial evidence to support a verdict of guilty.

## I.

In support of his first assignment, defendant argues that even though this be a prosecution for robbery, the trial judge was obligated to instruct on all lesser included offenses; that stealing is a lesser included offense, differing from robbery only in that robbery requires violence or placing the victim in fear, while stealing does not; and that the jury did not necessarily have to believe that the robbery was accomplished by putting Stallings in fear, thereby leaving the possibility that the jury might have found stealing only instead of robbery.

The fatal flaw in this argument is that there was no evidence at all tending to show that the robbery was accomplished otherwise than through the instillation of fear. Stallings testified that the robbers

had and displayed a gun and threatened to use it. Cooper also testified that when he saw the robbers leaving toward the rear door he also was able to see a gun barrel. Where, as here, a deadly weapon is used for obtaining money, a presumption arises that the victim was put in fear. State v. Keeney, 425 S.W.2d 85 (Mo.1968); State v. Ray, 354 S.W.2d 840 (Mo.1962), cert. denied 371 U.S. 868, 83 S.Ct. 129, 9 L.Ed. 2d 104; State v. Thompson, 299 S.W.2d 468 (Mo.1957). Indeed, even if Stallings had testified that he had not been placed in fear, that testimony could and would be disregarded as manifestly contrary to human experience. State v. Parker, 324 S.W.2d 717 (Mo.1959); State v. Tidwell, 500 S.W.2d 329, 332 (Mo.App.1973).

On facts precisely parallel to those here, a long line of cases holds that an instruction on stealing is not necessary where the State's evidence shows robbery and where the defendant claims innocence of any crime. State v. Moore, 106 Mo. 480, 17 S.W. 658 (1891); State v. Brown, 104 Mo. 365, 16 S.W. 406 (1891); State v. Whalen, 148 Mo. 286, 49 S.W. 989 (1899); State v. Coffee, 158 Mo. 568, 59 S.W. 964 (1900); State v. Daugherty, 302 Mo. 638, 259 S.W. 787 (1924); State v. Lasky, 133 S.W.2d 334 (Mo.1939); State v. Parker, 324 S.W. 2d 717 (Mo.1959); State v. Herron, 349 S.W.2d 936 (Mo.1961); State v. Sawyer, 365 S.W.2d 487, 1. c. 492 (Mo.1963); State v. Houston, 451 S.W.2d 37 (Mo.1970); State v. Tidwell, 500 S.W.2d 329, 332 (Mo.App.1973). A typical holding in this line of cases appears in the Sawyer opinion:

> "The State's evidence shows defendant participated in and committed the robbery in the first degree charged in which items and money were taken in an immaterial but substantial total amount. Defendant's evidence is such as to show he committed no crime—not even that of stealing in any degree. Thus, the evidence made a case of robbery in the first degree or nothing. There is no proper place for an instruction on stealing in

any amount, for there is no evidence to support such a submission." .

The cases cited by defendant have been carefully examined and are readily distinguishable. Defendant's contention founders on the sharp reef of solid precedent to the contrary.

## II.

In his attack upon the sufficiency of the State's evidence, defendant seeks to picture himself as a mere by-stander who "was merely there ·and may have simply been caught up in an unfortunate set of circumstances by being present at the wrong time." This situation simply cannot be so depicted. There can be no question but that this robbery was perpetrated by two young men acting in concert, and when the only other persons present were the three employees preparing to close the restaurant. It is estimated by the employee Robertson that the whole episode took place within the short period of about a minute. Thus when Cooper saw and identified defendant as being one of the robbers running toward the back door of the restaurant, that was during the extremely short space of time that the robbery was actually taking place and while the defendant was actively participating in that criminal act.

In an effort to escape from this damning testimony, defendant emphasizes that the only identification of defendant as being one of the two robbers comes from Cooper and that therefore Cooper's identification is vital to the State's case. Defendant goes on to argue forcefully that Cooper's identification should be disregarded because Cooper is near-sighted, and he was not wearing his glasses at the time of the crime. Defendant points particularly to some faltering by Cooper before being able to read the time on the clock on the wall of the courtroom.

 However, Cooper testified that defendant was only 10 to 12 feet away from him when defendant turned around on his way to the back of the restaurant. Cooper insisted that he could see well enough for identification at that short distance, and he did make repeated unequivocal identification of the defendant, including identification in the courtroom. The jury saw for itself Cooper's difficulty in reading the clock, and the weight to be given his identification testimony was peculiarly for determination by that fact finding body. Its determination has become final.

The judgment is affirmed.

All concur.