## UNITED STATES v. EMAN MFG. CO.

(District Court, D. Colorado. August 23, 1920.)

Criminal law ☞37—Violation of statute induced by government agent not ground for conviction.

A manufacturer of a medicinal preparation *held* not chargeable with violation of Food and Drugs Act, § 2 (Comp. St. § 8718), and section 8 as amended by Act Aug. 23, 1912, and Act March 3, 1913 (Comp. St. § 8724), by the shipment of a misbranded article in interstate commerce, where the only shipment of such character shown was on an order sent from another state, for the purpose of entrapment by a government agent, who had no reason to suppose that defendant had ever previously made such a shipment.

Criminal prosecution by the United States against the Eman Manufacturing Company. Trial to court by stipulation. Defendant discharged.

At the November, 1919, term of the District Court of the United States for the District of Colorado, the United States attorney for said district, acting upon a report by the Secretary of Agriculture, filed in the District Court aforesaid an information against the Eman Manufacturing Company, a corporation, Denver, Colo., alleging shipment by said defendant, in violation of Food and Drugs Act, § 8 (34 Stat. 771), as amended by Act Aug. 23, 1912, c. 352, and Act March 3, 1913, c. 117 (Comp. St. § 8724) on or about April 14, 1919, from the state of Colorado into the state of California, of a quantity of an article, labeled in part: " 'Sulfox,' A Medicinal Water Artifically Prepared. Sole Owners and Manufacturers, The Eman Mfg. Co. Incorporated. Main office: 1426 Curtis Street, Denver, Colo."—which was alleged to be misbranded.

Analysis of a sample of the article by the Bureau of Chemistry of this department showed that it was an aqueous solution, consisting essentially of sulphuric acid and traces of calcium sulphate, with a very faint trace of sulphur dioxid. It was alleged in substance in the information that the article was misbranded, for the reason that certain statements included in the circulars accompanying the article falsely and fraudulently represented it to be effective as a preventive, treatment, remedy, and cure for rheumatism, catarrh, la grippe, kidney and stomach trouble, hay fever, bronchitis, sugar diabetes, paralysis, St. Vitus' dance, indigestion, pyorrhea and other blood infections, lupus, cancer, gangrene, blood poisoning, dropsy, neuritis, piles, ulcers, eczema, erysipelas, tuberculosis, and germ propagation in the intestines, when, in truth and in fact it was not.

On June 5 1920, an agreed statement of facts was filed by the plaintiff and defendant, whereby, among other things, trial by jury was expressly waived, and it was agreed that the court should hear and determine the cause upon the stipulation and agreement of facts and the laws applicable thereto. On August 23, 1920, the cause having been tried upon the agreed statement of facts, the defendant was found not guilty and discharged, as will more fully appear from the decision of the court.

John A. Gordon, Asst. U. S. Dist. Atty., of Denver, Colo.
Clarence R. Anderson, of Denver, Colo., for defendant.

LEWIS, District Judge. The defendant prepares and offers for sale a fluid under the trade-mark "Sulfox," and the information charges that in April, 1919, it shipped from Denver to San Francisco, in interstate commerce, a number of bottles of the preparation which were misbranded as to its therapeutic and curative effects. When defendant was brought in to plead there was a statement of facts by counsel which raised a doubt as to whether the Food and Drugs Act had been violated as charged. Thereupon the district attorney and counsel for defendant filed a stipulation waiving a jury and setting out the facts in the case, from which it appears that one Elgar O. Eaton, one of plaintiff's agents, whose duty it was to investigate violations of the act, wrote and mailed to defendant the following letter:

"San Francisco, April 9, 1919. Eman Co., Denver, Colo. Dear Sirs: I have heard of your treatment called 'Sulfox.' I want to try it and I am sending $3.00 for a case of it. Send to my room at 972 Sutter Street, room 806. Ed. Eaton."

Eaton, before ordering the shipment, went to a druggist at San Francisco and asked for "Sulfox." The druggist had none. Eaton asked the druggist to order some for him. The druggist did so, but defendant refused to fill the order of the druggist. Eaton then ordered the shipment direct to himself by means of the foregoing letter. The

defendant did not know at the time it made the shipment that Eaton was an employee of the United States government and supposed the shipment was being made to one intending to use it for medicinal purposes as a remedy for some of the diseases for which it was recommended by the circulars accompanying it. The stipulation further recites: "That in making said order and inducing said shipment it was not the intention of the said Eaton to use said 'Sulfox' as a medicine or as a treatment for the cure, mitigation, or prevention of disease, but the shipment was procured by him for the sole purpose of analyzing the substance and of procuring evidence against the shipper of a violation of the Food and Drugs Act.

The district attorney relies upon Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550, and cases which follow it, in urging that a plea of guilty be entered and a fine imposed, and of course if the facts here bring the case within the rule there announced that must be done, notwithstanding a majority of the state courts appear to hold a contrary view. When the Grimm Case was considered below Judge Thayer held that the facts established guilt because the government agent who induced the defendant to write the nonmailable letter did not request the defendant to put the letter in the mail, but left the means of transmission wholly to the defendant's selection. He said:

"If such act is done voluntarily and intentionally—that is to say, if the nonmailable letter is deposited in the mail by the accused without solicitation on the part of the officer that the mail be used to convey such intelligence—the weight of judicial opinion seems to be that the act does not lose its criminal character, though the offense may have been committed in responding to an inquiry from a person in the government service which was made under an assumed name for the purpose of concealing his identity. * * * In the case at bar the evidence did not show that the accused was solicited to commit the offense charged in the indictment. The selection of the public mail as the medium for giving information where the most lewd and indecent pictures could be obtained was the voluntary act of the defendant, and he is criminally responsible therefor." (D. C.) 50 Fed. 528.

I can conceive of no way in which the defendant could have transmitted "Sulfox" to Eaton as requested in his letter that would not have been an interstate shipment. However, the Supreme Court, in considering Grimm's Case on error, made no mention of the position taken by Judge Thayer, but rested its affirmance on other ground. Mr. Justice Brewer, speaking for the court in that case, says:

"It does not appear that it was the purpose of the post-office inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business."

This language is a clear indication of the importance of the purpose of the government agent, that is, as to whether the act which he requests the citizen to do is for the purpose of inducing him to violate the statute. That this is so is more definitely stated in Price v. United States, 165 U. S. 311, at page 315, 17 Sup. Ct. 366, 368 (41 L. Ed. 727):

"It appears from the bill of exceptions that the government inspector who instigated the prosecution in this case had been informed that the statute

was being violated, and for the purpose of discovering the fact whether or not the plaintiff in error was engaged in such violation, the inspector wrote several communications of the nature of decoy letters, which are set forth in the record, asking the plaintiff in error to send him through the mail certain books of the character covered by the statute, which the plaintiff in error did, as is alleged by the prosecution, and as has been found by the verdict of the jury. This has been held to constitute no valid ground of objection."

The excerpt from the Grimm Case is repeated in Andrews v. United States, 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023. The stipulation does not disclose that the defendant here has ever sent "Sulfox" in interstate shipment other than the two bottles to Eaton in response to his letter. Eaton's failure to induce the defendant to violate the statute by shipping to the druggist, his letter to the defendant, the absence of facts as a basis from which he could believe or suspect that the defendant had on other occasions violated the statute, and the stipulation causes me to reach the conclusion that he wrote the letter to the defendant, not for the purpose of discovering violations but with the intention and purpose of inducing the defendant to violate the statute, and that on these facts Grimm's Case is not an authority in support of the prosecution, and that in the interests of a sound public policy the defendant should be found not guilty and discharged. Woo Wai v. U. S., 223 Fed. 412, 137 C. C. A. 604; Sam Yick v. U. S., 240 Fed. 60, 153 C. C. A. 96.

---

## THE DANA.

(District Court, E. D. New York. February 21, 1921.)

**Maritime liens ⬥28—Right to lien for coal furnished on order of charterer.**
 Libelant, who furnished coal to a steam lighter under charter requiring her return free from any liens accruing during the charter period, on orders from one representing both charterer and owner, who told him of the charter, *held* entitled to a lien under Act June 23, 1910, §§ 1, 3 (Comp. St. §§ 7783, 7785).

In Admiralty. Suit by B. F. Guinan, Incorporated against the steam lighter Dana. Decree for libelant.

Foley & Martin and James A. Martin, all of New York City, for libelant.

Gilroy & Townsend and Richard Townsend, all of New York City, for claimant.