### LEON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 18, 1923.)

No. 3990.

1. **Poisons** ⊚⇒9—**Evidence held sufficient to sustain conviction for unlawful dealing in narcotics.**

Evidence that a government officer asked defendants to sell him narcotics and agreed on a price to pay therefor, and that defendants delivered to him the quantity of morphine agreed on, whereupon he arrested them without paying them the money, was sufficient to sustain a verdict

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

convicting them of unlawfully dealing in narcotics, under Harrison Narcotic Act Dec. 17, 1914, § 1, as amended by Act Feb. 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), even if it would not have sustained a conviction under another count charging a sale.

**2. Criminal law ☞37—Charge on purchase by government officer held proper.**
In a prosecution for violating the Harrison Narcotic Act, as amended by Act Feb. 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g), where a government officer had undertaken to buy the narcotics from defendants, an instruction that, while the officer was unauthorized to induce a man to commit a crime, he was authorized to engage in a transaction with defendant to ascertain whether they were engaged in that kind of business, and was acting within his rights if he did not overreach the defendants by some unusual persuasion to get them to commit the crime, was correct.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Joe Leon and others were convicted of violating the Harrison Narcotic Act, as amended, and they bring error. Affirmed.

Channing Follette, of Los Angeles, Cal., for plaintiff in error Trueba.

J. Robert O'Connor, Charles Scholz, and Ira Brunk, all of Los Angeles, Cal., for plaintiff in error Leon.

Joseph C. Burke, U. S. Atty., of Los Angeles, Cal.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The plaintiffs in error, Leon and Trueba, were indicted and convicted in the court below under that provision of the Act of Congress of February 24, 1919, 40 Stat. 1057–1130 (Comp. St. Ann. Supp. 1919, § 6287g), so amending the former Act of December 17, 1914, commonly known as the Harrison Narcotic Act, as to read in part as follows:

"Section 1. That on or before July 1 of each year every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, or gives away opium or coca leaves, or any compound, manufacture, salt, derivative or preparation thereof shall register with the collector of internal revenue of the district his name or style, place of business and place or places where such business is to be carried on, and pay the special taxes hereinafter provided. * * * It shall be unlawful for any person required to register under the provisions of this act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of the aforesaid drugs without having registered and paid the special tax as imposed by this section,"

—the statute making provision for the payment of such tax. The indictment against the plaintiffs in error and one Santos contained two counts, under the second of which the plaintiffs in error were convicted. That count alleged in effect that the three persons mentioned, at a certain named time and place within the jurisdiction of the trial court, "did knowingly, willfully, unlawfully, and feloniously deal in and distribute certain narcotics, to wit, 12 ounces of morphine; they, the said Jose Santos, Joe Leon, and Frank Trueba, having not then and there registered and paid the special tax as required and imposed by

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
290 F.—25

section 1 of the Act of Congress approved December 17, 1914, as amended by the Act approved February 24, 1919, and known as the Harrison Narcotic Act, and the said defendants, Jose Santos, Joe Leon, and Frank Trueba were then and there persons required to register and pay the special tax under and by the act as aforesaid and section 1 thereof, the said morphine was not then and there contained in the original stamped packages having affixed thereto and bearing thereon appropriate tax paid stamps as required by the said Harrison Narcotic Act, as aforesaid, and the said morphine was then and there a compound, manufacture, salt, derivative and preparation of opium."

[1] In response to the contention on behalf of plaintiffs in error that the evidence was insufficient to justify the verdict of guilty, it is enough to refer briefly to the testimony of the witness Halstead, an officer of the government, who testified in substance, among other things, that when he came to Los Angeles he was referred to Trueba, who took and introduced him to Leon at 521 High street, Santos being also present, when the three defendants and himself went into the front room of the place, his conversation with Leon and Trueba being in English; that during the conversation he told Leon that he was a peddler of narcotics, and wanted to buy some, which they produced, and he tasted and found was morphine. We here quote a few of the questions to and answers of this witness:

"Q. Now, how much did you pay, or offer to pay, to Santos, Leon, or Trueba, for this morphine, or any part of it? A. $65 an ounce.

"Q. And how much were you to pay? What was the total that you offered or delivered to them for that? A. $780.

"Q. Did you give them the money? A. I did not.

"Q. Did you offer it to them? A. I did not.

"Q. Did you exhibit to them the money and say, "Here"? A. Yes. I wrapped the narcotics up, and I pulled the money out and stated, 'Well, you add that up again to see if that is the correct amount;' and when they started to write it up, why, then I pulled my gun and placed them under arrest.

"Q. You never did intend to buy this morphine, did you, Mr. Halstead? A. Why, that is—I bought it.

"Q. How did you buy it? Did you deliver the money to these people? A. I didn't deliver the money, but they delivered the narcotics to me, and the price had been agreed upon; the delivery had been made.

"Q. Well, how did you intend to pay for it, Mr. Halstead? A. Why, I was alone, or I might have given them the money; but I was alone in the room, and I didn't want to risk that much money."

In the face of such testimony as that, it is idle to contend that the evidence was insufficient to sustain the verdict—the conflict in the testimony being a matter for the jury only.

[2] The court very properly instructed the jury that, while the government officer was unauthorized to induce a man to commit a crime, he was authorized—

"to engage in a transaction with the defendant in order to ascertain if he is engaged in that kind of business, and if he does not overreach the defendant by some untoward or unusual persuasion to get him to commit the crime the officer is acting within his rights."

The court left it to the jury to find under count 1 of the indictment whether there was an actual sale, as alleged in that count, but properly,

as we think, directed that they might be convicted of dealing in or distributing the narcotic under the second count of the indictment.

The judgment is affirmed.