## SILK v. UNITED STATES.

## MEEK v. SAME.

(Circuit Court of Appeals, Eighth Circuit. December 1, 1926.)

Nos. 7359, 7360.

1. **Criminal law** ⊚⟶739(1)—**Defense of entrapment held to present an issue for the jury.**

In a prosecution for illegal transportation and sale of liquor, a defendant testified that he had never on any other occasion handled or transported liquor; that a prohibition agent, who was a friend of his relatives, falsely represented to defendant that he was a bootlegger and desired to purchase some alcohol in Omaha, but was unacquainted there; that on the ground of friendship and of being a Mason he induced defendant to purchase with money furnished him a quantity of alcohol, and to bring it to said agent. *Held* that, if such testimony was true, it showed entrapment, and that issue should have been submitted to the jury.

2. **Criminal law** ⊚⟶683(1)—**Reputation of defendant as violator of law may be shown in rebuttal of defense of entrapment.**

Where the defense of entrapment was presented in a prosecution for violation of the Prohibition Act, the prosecution was properly permitted to show in rebuttal that the officers acted on information that defendants were reputed violators of the law.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Criminal prosecution by the United States against James J. Silk and Louis Meek. Judgment of conviction and defendants separately bring error. Affirmed as to defendant Silk, and reversed, with instructions, as to defendant Meek.

James H. Hanley, of Omaha, Neb. (R. B. Schuyler and Thomas J. O'Brien, both of Omaha, Neb., on the brief), for plaintiffs in error.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., and Ambrose C. Epperson and Andrew C. Scott, Asst. U. S. Attys., all of Omaha, Neb., on the brief), for the United States.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. An indictment containing seven counts was returned in the District Court for the District of Nebraska against James J. Silk and Louis Meek. The first count charged a conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.). The second count charged an unlawful transportation of intoxicating liquor on April 13, 1925, the third an unlawful sale of intoxicating liquor on April 13, 1925, the fourth an unlawful transportation of intoxicating liquor on April 20, 1925, the fifth an unlawful sale of intoxicating liquor on April 20, 1925, the sixth an unlawful transportation of intoxicating liquor on April 27, 1925, and the seventh an unlawful sale of intoxicating liquor on April 27, 1925, contrary to the provisions of the National Prohibition Act. They were tried jointly. Meek was found guilty upon the first, second, third, fourth, and sixth counts, and not guilty upon the fifth and seventh counts. Silk was found guilty upon the first, fifth and seventh counts, and not guilty on the second, third, fourth, and sixth counts. The sentences imposed upon Meek were as follows: On count 1, six months' imprisonment and a fine of $500; count 2, a fine of $1; count 3, six months' imprisonment; count 4, a fine of $1; and count 6, a fine of $1. The sentences imposed upon Silk were as follows: Count 1, six months' imprisonment and a fine of $500; count 5, three months' imprisonment; count 7, six months' imprisonment. The sentences were to run concurrently.

Silk owned and operated a drug store at 1322 North Twenty-Fourth street, Omaha. S. D. Beazell and H. H. Bernard, prohibition agents, testified that they met Meek at the drug store on March 30, 1925, and stated to him that they wanted to purchase some grain alcohol; that Meek agreed to see if he could get some alcohol for them; that they returned to the drug store on April 1, 1925, and again met Meek, who introduced them to Silk; that thereafter Silk and Meek made three sales of alcohol to them; that on April 13, 1925, Meek delivered the first purchase, five gallons of alcohol, to them at their apartment at 667 South Twenty-Sixth avenue, Omaha; that on April 20, 1925, Silk and Meek delivered the second purchase, five gal-

lons of alcohol, to them at their apartment; and that on April 27, 1925, Silk and Meek delivered the third purchase, five gallons of alcohol, to them at their apartment.

[1] Meek testified that he met Beazell and Bernard on March 30, 1925; that, while he was talking to them, Silk drove up; that he introduced Silk to Bernard and Beazell at Bernard's request; that Silk then went into the drug store; that Bernard had been a friend of his family for 20 years; that they talked about Meek's brother-in-law and his child at Kansas City; that Bernard said he wanted to get some alcohol; that he advised Bernard he was not in that business; that Bernard stated he had been in the bootlegging business in Kansas City, and had just lost a carload of alcohol through seizure by prohibition officers, that he had to leave Kansas City, that he was short of money, and that he had to get some business in Omaha.

Meek further testified as follows:

"I met them out there on Twenty-Fourth street. * * * He said, 'I can't get set right in Omaha, and you will have to get me some alcohol;' and I says, 'That is out of my line,' and he told me about taking Tom Arnett into the Mason's lodge, and he showed me his credentials as being a Mason, and he says, 'Lou, you know I would never do nothing wrong to you, and I have got to have some help until I get acquainted;' so he said, 'If you will get me some alcohol, I will pay you for your trouble;' and I studied the thing over, and I said, 'If I was to get that for you, it would not be for the money; it would be for the friendship of the family;' and I said, 'I don't know whether I can get any or not.' So he says, 'Well, see what you can do.' So he left."

"The first time he was out, he said he was stopping at the Hotel Conant, and the third time he came out he said, 'I have rented an apartment;' and he said, 'I am all set right ready to go;' but he says, 'I can't get the stuff;' and he says, 'You will have to assist me in getting it.' So he called me at my house, and left a phone call for me; so I called him up, and he asked me if I had located anything, and I told him I had not. So the next day he came out—pretty sure it was the next day; it wasn't over a day or two—he came out here and says, 'Well, I have got to have some stuff now; can't you find any?' And I had seen a colored fellow by the name of Nigger Charley, and he said he has some alcohol; so Bernard asked me how much it would be, and I told him I didn't know the price of alcohol in Omaha, and he says—

I said, 'You are in the business, and you should know the price.' He said, 'Well, Kansas City had three prices; eight, ten, and twelve;' and he says, 'I always use the best;' and he says, 'Here is sixty dollars and you get me five gallons.' I took the sixty dollars and I paid the sixty dollars for those five. They told me it was in one-gallon cans, but I never unpacked them or a thing. I delivered them just as they brought them to me."

Meek further testified that Bernard again came to see him and said: "Lou, I can't get fixed out here; they are afraid of me, * * * you will have to get me five more;" that he said to Bernard, "Why, you should be all right now by this time, if you are in the game;" and Bernard replied, "I will tell you, if you will get me five gallons, I will never ask you to get any more;" that Bernard, then gave him $60, and he obtained five more gallons of alcohol and delivered it to the apartment.

Meek denied the sale and delivery of the third five gallons of alcohol. Meek's testimony was corroborated in certain particulars by the testimony of the prohibition agents. Silk denied the testimony of Bernard and Beazell with reference to him, except that he admitted meeting them and being introduced to them by Meek.

In rebuttal, Robert P. Samardick, chief of the prohibition field forces for the state of Nebraska, testified that the drug store had the reputation of being a "bootlegging joint," and Silk the reputation of being a "bootlegger," and that he had received a great many complaints against Silk on that account. Each defendant requested a charge upon entrapment. These requests were refused. The court, in his general charge to the jury, among other things, said:

"Much has been said, and much complaint and argument and discussion have been heard, about the conduct of officers who testified here, and who had to do with what is called 'making the case,' and much of that undoubtedly gives rise to deep consideration on your part as to the conduct of officers; but, generally speaking, certainly so far as this case is concerned, as to what officer shall be employed to detect crime, and how they shall go about it to detect crime, those are matters for the executive or other departments of the government to deal with, and are not anything that have to do with the court. * * * As a matter of law it doesn't matter how he came to do it, whether officers persuaded him that by doing it he would help them to carry on a bootlegging

business or not; that. is all outside of it. The statute denounces that transportation, and when a man transports intoxicating liquor knowingly and willfully hs is guilty under the law. Meek so stated, and he is guilty under the law."

The.first proposition urged by counsel for defendants is that the court erred in refusing to give the requested charges on entrapment, and in charging the jury as above set out relative to the acts and conduct of the officers. This court had occasion to pass upon the question of entrapment, under a state of facts similar to those testified to by the defendant Meek, in Butts v. U. S. (C. C. A. 8) 273 F. 35, 18 A. L. R. 143. Butts was charged with a violation of the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). One Rudolph was under arrest, also charged with a violation of that act. Both Rudolph and Butts were addicts. The narcotic officers induced Rudolph to go to Butts and attempt to buy morphine from the latter. Butts testified that Rudolph called him over the telephone and asked him if he could get some morphine, telling him that. he was sick and that his wife was sick; that he told Rudolph he did not have any morphine himself and could not get any, and that Rudolph replied he would call again the next day; that Rudolph called him again the next day, and that he again told Rudolph he had no morphine; that Rudolph then asked him if he could get him some from somebody, and thereupon he did get a box from one Joe Green, and arranged to meet Rudolph and deliver it to him; that he did not buy the morphine from Green, but was to give Green just what he got from Rudolph for it. Butts further testified that he had never sold or dealt in narcotics prior to the transaction in question. This court held that, if the facts testified to by Butts were true, there was an unlawful entrapment, which entitled Butts to a verdict of not guilty, and held that it was error to refuse to instruct upon the issue of entrapment.

In the opinion the court said: "It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution. * * * But when the accused has never committed such an offense as that charged against him prior to the time when he is charged with the offense prosecuted, and never conceived any intention of committing the offense prosecuted, or any such offense, and had not the means to do so, the fact that the officers of the government incited and by persuasion and representation lured him to commit the offense charged, in order to entrap, arrest, and prosecute him therefor, is and ought to be fatal to the prosecution, and to entitle the accused to a verdict of not guilty."

Meek testified in substance that prior to the transactions in question he had never engaged in the unlawful sale or transportation of intoxicating liquor, that Bernard by means of false representations persuaded him to make two purchases of alcohol for Bernard to help the latter, and that he made no profit out of the transactions. Meek denied making the third sale testified to by the prohibition agents. On the other hand, the prohibition agents testified in substance that the drug store had the reputation of being a "bootlegging joint," and that Silk had the reputation of being a "bootlegger," and that, in order to obtain evidence on which to convict Meek and Silk, whom they suspicioned, they went to the drug store and afforded Meek and Silk an opportunity to sell alcohol to them.

If the testimony of Meek was true, as to him there was an unlawful entrapment. Butts v. U. S., supra; Peterson v. U. S. (C. C. A. 9) 255 F. 433; U. S. v. Eman Mfg. Co. (D. C.) 271 F. 353. On the other hand, if the testimony of the officers was true, there was an intent and purpose to violate the law on the part of Meek, and the officers merely furnished him with an opportunity to do so, and there was no unlawful entrapment. De Long v. U. S. (C. C. A. 8) 4 F. (2d) 244; Reyff v. U. S. (C. C. A. 9) 2 F. (2d) 39; Farley v. U. S. (C. C. A. 9) 269 F. 721; Billingsley v. U. S. (C. C. A. 6) 274 F. 86; Rothman v. U. S. (C. C. A. 2) 270 F. 31; Leon v. U. S. (C. C. A. 9) 290 F. 384; Partan v. U. S. (C. C. A. 9) 261 F. 515; Ritter v. U. S. (C. C. A. 9) 293 F. 187; U. S. v. Reisenweber (C. C. A. 2) 288 F. 520; Lucadamo v. U. S. (C. C. A. 2) 280 F. 653; Grimm v. U. S., 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Andrews v. U. S., 162 U. S. 420, 16 S. Ct. 798, 40 L. Ed. 1023. The evidence therefore presented a question of fact for the jury upon the issue of entrapment as to the defendant Meek, which should have been submitted under proper instructions. Cermak v. U. S. (C. C. A. 6) 4 F. (2d) 99.

Silk denied all of the charges against him, and denied the testimony of the agents Bernard and Beazell with reference to him,

except that he admitted being introduced to them by Meek. Both Meek and Silk denied the sale alleged in count 7. On this count, Meek was found not guilty, and Silk was found guilty. There was no entrapment of the defendant Silk.

[2] Counsel for the defendants further urge that the court committed error in permitting the witness Samardick to testify over objection concerning the reputation of Silk and the drug store as above set out. At the time this testimony was offered, both Silk and Meek were urging entrapment as a defense. Samardick's testimony was offered and received in explanation of the conduct of the officers. At the request of counsel for the defendants, the court instructed the jury concerning this testimony substantially as follows: That such testimony could only be considered in explanation of the conduct of the officers in seeking evidence against the defendants, and should not be considered by them as proof of the charges made against the defendants. Under the circumstances, neither defendant is in a position to complain against the introduction of this evidence. The record does not disclose any prejudicial error which affected the defendant Silk.

For the reasons above stated, the judgments as to the defendant Silk are affirmed, and the judgments as to the defendant Meek are reversed, with instructions to grant him a new trial on counts 1, 2, 3, 4, and 6.