THE STATE v. FRED HICKS, Appellant.—33 S. W. (2d) 923.

Division Two, December 20, 1930.

*Benj. H. Marbury* and *W. A. Brookshire* for appellant.

*Stratton Shartel,* Attorney-General, and *G. C. Weatherby,* Assistant Attorney-General, for respondent.

1058

DAVIS, C.—In an information filed in the Circuit Court of St. Francois County, defendant was charged, on April 26, 1929, with the sale of moonshine whiskey. The verdict of the jury found defendant guilty as charged in the information, and assessed his punishment at two years' imprisonment in the penitentiary. Judgment was entered on the verdict, and defendant appealed.

The evidence adduced in behalf of the State warrants the finding that Roy J. Dugan and M. L. Hogg were United States Prohibition agents, stationed at St. Louis. On April 25, 1929, they were guests of the Ada Hotel in Farmington. On that day they became acquainted with defendant Hicks, meeting him at the hotel. Later that day they drove to the Kennedy place, and while said agents remained in the car, they had defendant procure liquor for them, furnishing him money with which to get it. They tried at two or three places to get whiskey before obtaining it at the Kennedy

place. The agents and defendant drank of the whiskey on obtaining it. On returning to the hotel, defendant accompanied the agents to their room, and was given by them a drink of whiskey. The next morning, on April 26, 1929, between seven and seven-thirty A. M., Dugan met defendant in front of the hotel. Dugan testified: "I asked Mr. Hicks if he could get me a pint of whiskey. He said, Yes. I told him to bring it up to our room at the Ada Hotel, Room 17, and he got in his automobile and drove down the street. In about twenty minutes, he returned. In the meantime, I had gone to my room with my partner, Hogg, and in about twenty minutes, Mr. Hicks came up and knocked on the door, and I asked him if he had the whiskey and he said, Yes, and he took a pint bottle out of his pocket and handed it to Agent Hogg, and Agent Hogg said, 'How much?' and he said 'Dollar and a half,' and Agent Hogg paid him a dollar and a half." The contents of the bottle delivered to Hogg on the morning of April 26th, both Hogg and Dugan testified, was moonshine. Dugan went to defendant and asked him if he could get him a pint. On April 26th, before asking defendant to get him whiskey, Dugan first asked him if he had any liquor, and defendant said that he did not. Hogg said that he told Dugan to have defendant bring up a pint of whiskey.

The defendant's evidence tends to show, by the employees of the Ada Hotel, that both agents were drunk when they were shown to their rooms and that they, with difficulty, climbed the stairs. They were drunk at the dining table and were drinking the whole time they were at the hotel.

Defendant testified that he became acquainted with Hogg and Dugan on the morning of April 25th, at the Ada Hotel. They approached defendant, entered into a conversation with him, stating that their car was stolen and asking him how to get in touch with the sheriff. Hogg was advised that the sheriff's office was in the court house, and he left and returned in twenty minutes, saying that he had gotten in touch with the sheriff. Hogg then seated himself by defendant and Dugan appeared. Hogg said to Dugan, "Did you take that pint of whiskey out of the car last night when you parked it?" Dugan replied, "No, I didn't take it out; I left it in the car so we could have a good drink apiece this morning. You know we were both drunk last night and we'll have to have a drink this morning to straighten up on." Hogg said, "Wouldn't it be awful if the sheriff would find that car and find that pint of liquor in the car?" They then stated that they were both needing a drink and they asked if a man could get a drink in town. Later on that day liquor was obtained, Dugan paying for it, and they drank it as they returned to town and at the hotel.

On the evening of April 25th, Hogg invited defendant to his room, and he drank with them. Hogg was apparently sober, but

Dugan was half drunk. On the next morning, April 26th, defendant saw Dugan in front of the hotel. Dugan beckoned him to approach. Defendant testified as follows:

"Q. State to the court and jury just what the conversation was, Mr. Hicks. A. I went over to where he was and he said, 'My friend, I am nearly dead this morning; my partner is sick, too, he is in bed,' and he said, 'We would like to have a pint of liquor this morning. If you can get it for us, it would be the biggest friendship we ever had done to us.'

"Q. Tell what else was said or done. A. I said, 'Well, I haven't got any.' He said, 'Can't you get out and get us a pint?'

"Q. Go on. Tell what else, if anything, was said. A. I said, 'Well, I might do that.' He said, 'If you will, it will be the biggest accommodation we ever had done. My partner says he can't get up until he gets a drink.' He said, 'I would give you the money to buy it with now but I haven't got the change; if you will bring it to our room, my partner will give you the change for it.'"

He testified that they did not tell him what to spend for the pint, but that he obtained the liquor for them, and took it to their room and delivered it to Hogg, Hogg giving him a dollar and a half. He had no liquor when Dugan approached him, nor did he (defendant) mention liquor to Dugan; that Dugan first mentioned it. In obtaining the liquor, he was acting for Dugan and that he would not have bought it for Dugan if Dugan had not requested him to get it for him. He had no interest in the liquor. On cross-examination, at the order of the court the defendant was required to state that he obtained the pint of whiskey delivered to Hogg on April 26th from Mrs. Tine Murphy, a negro woman in the south part of town, and that he paid her a dollar and a half for it, paying and taking to her the identical money Hogg gave him. Defendant stated that about five years previously he pleaded guilty to a violation of the liquor laws and was fined. A number of witnesses testified that they had known defendant for a number of years, and that his reputation for truth and veracity was good, notwithstanding his plea of guilty.

I. Defendant offered instructions involving the purported issue of entrapment, and charges error because the court refused them.

The facts adduced by the State develop that on April 25, 1929, the officers approached defendant and requested that he procure for them a pint of whiskey. Defendant's evidence tends to show that the officers made the request and that he informed them that, as far as he knew, the town was dry and that if he wanted a drink, he would not know where to go to get it. The State's evidence also tends to show that the officers, accompanied by defendant, drove to several

places in St. Francois County, but were unable to obtain at such places any liquor. Finally they succeeded in obtaining a pint of whiskey at the Kennedy place, the officers furnishing defendant a dollar and a half with which to purchase it. Subsequently that day, the officers and defendant, in the role of comrades, both on the way to the hotel and in the hotel room, consumed the whiskey.

The State's evidence further tends to show that, on the morning of April 26th, Officer Dugan again approached defendant in the lobby of the Ada Hotel and asked if he had any whiskey. Defendant answered in the negative, and Dugan asked him to obtain a pint for them, and told him to take it to the officers' room. Defendant's evidence tends to show that Dugan, the morning of April 26th, was seated on a bench in front of the hotel. When defendant appeared, Dugan beckoned to him. Dugan said: ''My friend, I am nearly dead this morning; my partner is sick, too, he is in bed. We would like to have a pint of liquor this morning. If you can get it for us, it would be the biggest friendship we ever had done to us. If you will, it will be the biggest accommodation we ever had done us. My partner says he can't get up until he gets a drink. I would give you the money to buy it with now, but I haven't got the change; if you will bring it to our room my partner will give you the change for it.''

We think it is evident that the Federal officers, in attempting to apprehend violators of the liquor laws, were not guilty of a criminal offense, for, in purchasing liquor, even if that could be said to be an offense under the Federal laws, the criminal intent was lacking, for their purpose was to detect crime. But such officers cannot procure a person to commit a crime and then obtain his conviction. [30 L. R. A. (N. S.) 951.] If the officers merely furnished an opportunity for defendant to commit the crime, then entrapment is not involved. [State v. Sheeler, 7 S. W. (2d) 340.] We stated the rule in State v. Decker, 321 Mo. 1163, l. c. 1169, 14 S. W. (2d) 617, l. c. 619-20, thus: ''Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime, in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper, and the accused is lured into the commission of the offense charged, in order to prosecute him therefor, it is the general rule that no conviction may be had, though the criminality of the act is not affected by any question of consent. [Butts v. United States (C. C. A.), 273 Fed. 35, 18 A. L. R. 146.]

Defendant's evidence tends to show, as well as that of the State, that the criminal intent originated in the mind of the officers. Defendant's evidence, however, tends to show further that the officers

not only originated the intent, but they schemed to procure defendant to obtain whiskey by obtaining defendant's confidence and playing upon his sympathy, in that they drank with him in the role of comrades and feigned illness and the necessity of whiskey to quiet their nerves. The officers, under the facts herein, induced defendant, if he was the agent of the vendor of the whiskey, to do an unlawful act. One may not through sympathetic appeals be induced to commit a crime and then be prosecuted and convicted for committing it. [Cain v. United States (C. C. A.), 19 Fed. (2d) 472, l. c. 475; Jarl v. United States (C. C. A.), 19 Fed. (2d) 891; Silk v. United States, 16 Fed. (2d) 568; Cline v. United States (C. C. A.), 20 Fed. (2d) 494.] The court should have instructed the jury relative to entrapment, and if the instructions were incorrect, it should have drawn and given correct instructions. [State v. Starr, 244 Mo. 161, 148 S. W. 862.]

II. The facts relative to the propriety of directing a verdict for defendant are close, in our opinion, both as to an entrapment and the lack of evidence that defendant was the agent of the owner of the whiskey, rather than the agent of the officers. Certainly, the officers originated the criminal intent in the mind of defendant. There is also a strong presumption, in view of the facts that the officers and defendant tried to obtain whiskey at several places before succeeding at the Kennedy place, and the sympathetic appeal made to defendant the next morning, that defendant was the purchasing agent of the officers rather than the selling agent of the owner of the whiskey. However, it may be that facts are capable of being developed both by the State and defendant more fully and consequently we are remanding the cause for a retrial as the State is advised.

III. Defendant complains that the trial court erred in overruling its application for a change of venue. The affidavits of the disinterested witnesses must state facts, not conclusions as they did in this instance. In this regard the trial court did not err. [State v. Hancock, 7 S. W. (2d) 275.]

The judgment is reversed and the cause remanded to the trial court. *Henwood,* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.