## REDDISH v. UNITED STATES.
### No. 9041.

Circuit Court of Appeals, Eighth Circuit.
Jan. 23, 1932.

Robert L. Spelbrink, of St. Louis, Mo., for appellant.

Arthur A. Hapke, Asst. U. S. Atty., of St. Louis, Mo. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., on the brief), for the United States.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant and one John C. Cosgrove, government witness, are, and were, drug addicts. They became acquainted in the penitentiary at Leavenworth, Kan., where they were serving sentences for the illegal possession of narcotics. Cosgrove, who was released first, gave Reddish his St. Louis address. When, about six months later, Reddish was released, he returned to St. Louis, found Cosgrove, and from him sought to learn where morphine could be obtained. Cosgrove testifies that, after this time, he and Reddish would pool their money, and first one, and then the other, would buy morphine for both. Reddish testifies that, prior to January 2, 1930, Cosgrove was the one who made these purchases. It seems conceded that, after their release from the penitentiary, both Reddish and Cosgrove continued their drug habits as before. This involved the mutual purchase, possession, furnishing, and use of narcotics. About December 1, 1929, Cosgrove became an informer for the government. He acted under the orders of the narcotic agent in charge at St. Louis, who furnished him with money wherewith to make purchases from those engaged in the unlawful traffic. On or about January 2, 1930, the two met at a "soft drink parlor," or saloon, in St. Louis. Cosgrove gave Reddish $10 with which to purchase some morphine for him. Reddish testifies that Cosgrove gave him the name of Willie Ecks as a person from whom morphine could be obtained. Cosgrove denies this, and denies that he knew, or knew of, such a man. About an hour later, Reddish returned with a package of morphine which he turned over to Cosgrove, who delivered it to the narcotic agent. This transaction was substantially repeated on January 7, 1930, on January 10, 1930, and on January 11, 1930. The first package contained seven grains of morphine; the second, two grains; the third, six grains; and the fourth, six grains. Appellant was indicted in four counts based upon the foregoing acts. Conviction resulted upon each count, and concurrent sentences were imposed.

The only error relied upon is the action of the court in overruling a demurrer at the close of all the evidence, and in failing to direct a verdict in favor of defendant, on the ground that the testimony showed a clear case of entrapment. No demurrer to the evidence appears in the record at the close of all the testimony, or elsewhere, although there is a recital in a journal entry that a demurrer was filed. The assignments of error contain what purports to be the language of this demurrer. The suggestion of entrapment does not appear therein, nor is there any mention of it in the record. Counsel for appellant stated in argument that he took this matter up with the trial judge, who agreed to instruct the jury on entrapment. The charge is not in the record, but it is conceded, at least not denied, that it contained a correct instruction on entrapment. We think, on the record, that that is the most appellant could ask. There is in that record no hint of exception to this action of the court.

It appears in testimony that, while Reddish may not have been a peddler in the usual acceptance of that term, he was nevertheless known, or at least suspected, of being one of the men who were supplying narcotics. There was here, at most, an open question with respect to entrapment, which justified the court in submitting that issue to the jury. Silk v. United States (C. C. A. 8) 16 F.(2d) 568; Cermak v. United States (C. C. A. 6) 4 F.(2d) 99.

The state of the record justifies this conclusion. It follows that the judgment below should be affirmed, and it is so ordered.