STATE of Missouri, Respondent,

v.

Charles PATTON, Appellant.

No. 46069.

Supreme Court of Missouri,

En Banc.

Jan. 13, 1958.

**642**

Ronald J. Fuller, Rolla, for appellant.

Jay White, Prosecuting Atty., Rolla, for respondent.

STORCKMAN, Judge.

The defendant, convicted of a misdemeanor, appealed to the Springfield Court of Appeals where the judgment was ordered reversed and the defendant discharged. The opinion, reported in Mo.App., 297 S.W.2d 19, holds the state's evidence was insufficient to support the judgment of conviction. The appeal was transferred on this court's order.

The prosecution is based upon § 311.310, RSMo 1949, V.A.M.S. The information charged that the defendant wilfully and unlawfully supplied "intoxicating liquor towit: beer" to three boys, all under the age of 21 years. The term "intoxicating liquor," as used in Chapter 311 of the statutes, is defined to mean and include, among others, fermented and malt liquors containing in excess of 3.2% of alcohol by weight. Sec. 311.020.

The state's evidence tended to prove that Munroe Hodge, age 19, Georgie Hodge, 15, and Vernon Smith, 13, spent a part of their time shining shoes in taverns in the city of Rolla. On November 22, 1954, the boys were in Montgomery's Tavern where the defendant, Charles Patton, was drinking beer. Between 8:00 and 8:30 p. m. the three boys and the defendant left the tavern together. The defendant obtained a pickup truck belonging to a hardware company for which he worked and rode about the city with the boys for about three hours. During this time, the state's evidence tended to show, the defendant bought liquor at the Eagles Club and at Mitchell's Liquor Store, which he shared with the boys. The liquor was in sealed cans which the defendant opened and of which they all partook. The two boys who testified said the liquor was beer; they recognized it by taste because their father had given them beer to drink on previous occasions. The labels on the cans, they said, were Budweiser and Red Cap Ale. The two Hodge boys testified that they each drank about three cans of beer; it made them "tipsy," and "dizzy," they were unsteady and staggered, and one of them fell to the ground, all as more fully recounted in the statement of facts in the court of appeal's opinion.

Neither of the witnesses knew the alcoholic content of the liquor.

The defendant's motion for new trial, among other assignments, alleges the trial court erred in failing to sustain the motions for judgment of acquittal filed at the close of the state's evidence and again at the close of all the evidence. The motion asserts the evidence was insufficient to sustain the conviction because the state failed to produce any evidence that the defendant supplied the minors with a beverage containing the percentage of alcohol which would establish the beverage to be intoxicating liquor under the statutes, or that it contained alcohol in excess of 3.2% by weight. He further claimed there was no proof the defendant supplied the minors with a beverage containing any alcohol whatsoever. The motion requests a new trial, but in his brief on appeal the defendant concludes his written argument with the prayer that "the judgment of the trial court should be reversed and the defendant discharged." The respondent state contends the evidence was sufficient to support the conviction under § 311.310 and, if the evidence is insufficient, the defendant should not be discharged but the cause should be remanded for a new trial.

We agree with the conclusion of the Springfield Court of Appeals that the evidence was insufficient to support the conviction, but we are not in accord with its disposition of the cause. Except as otherwise herein noted, we approve and adopt the holdings of the court of appeal's opinion without undertaking to restate or incorporate them in this opinion except by reference.

■ The prosecuting attorney here contends that a case was made under § 311.310 by showing that a malt or fermented beverage was supplied to the boys and that it was intoxicating in fact. His theory is that § 311.020 deals with and defines eight different categories or classes of beverages, and only the last, that is, "all preparations or mixtures for beverage purposes," needs to be shown to contain more than 3.2% of alcohol by weight. He contends that all the beverages or liquors previously mentioned in § 311.020, including malt and fermented liquors, are deemed to be "intoxicating liquors" regardless of their alcoholic content.

With this contention we cannot agree. Considering § 311.020 alone, it is apparent that the phrase "containing in excess of three and two-tenths per cent of alcohol by weight" modifies and qualifies all of the beverages and liquors previously mentioned. This construction is further borne out by examination of the licensing and regulatory provisions of Ch. 311 and Ch. 312, the latter chapter dealing with so-called "nonintoxicating beer." Sec. 312.020 provides: "Beer having an alcoholic content of not less than one-half of one per cent by volume nor exceeding three and two-tenths per cent by weight, is hereby declared to be 'nonintoxicating beer,' * *." The construction for which the state contends would tend to render this definition meaningless and to bring the subject matter of Ch. 312 within the purview of Ch. 311.

■■ The Court did not err, as the defendant contends, in permitting Georgie and Munroe Hodge to testify concerning the effect the drinking of the beer had upon them. While the gist of the offense is giving or supplying the prohibited liquor to the minors, the intoxicating effect of the beer upon the boys tended to prove that it was an alcoholic beverage and that was a part, though not all, of the state's case. Whether these signs of intoxication were real or fancied went to the credibility of the testimony, a matter for the jury to determine.

■ The respondent state further contends: "The fact that the beer and ale was purchased at a package liquor store in sealed cans and labeled as beer and ale is clear proof that the beer and ale were of the intoxicating liquor beverage group." In substance, the evidence on this score was that the defendant stopped and went into the Eagles Club and into Mitchell's Liquor

Store while the boys remained in the truck. The defendant returned in each instance with sealed cans bearing the name Budweiser or Red Cap Ale which had the taste of beer and an intoxicating effect upon the boys. This evidence did tend to prove the defendant supplied the boys with beer containing alcohol. However, there is no evidence tending to show the beer contained alcohol in excess of 3.2% and without this there is no basis upon which the jury could reasonably find that the violation was within the purview of § 311.310 under which the defendant is charged.

■ The general assembly has seen fit to treat the supplying or giving away of "nonintoxicating beer" as a separate and distinct offense, § 312.400, although it is also a misdemeanor carrying the same penalties as in the case of intoxicating liquor. See §§ 311.880 and 312.500. The wisdom of so doing is for the legislature; the courts must give effect to the statutes as they are written.

■ While the judgment must be reversed, we are not satisfied, on the record before us, that the defendant should be discharged. Sec. 547.290 of our criminal statutes provides that "if the judgment be reversed, the supreme court shall direct a new trial, or that defendant be absolutely discharged, according to the circumstances of the case." 42 V.A.M.S. Supreme Court Rule 28.14 extends the application of this procedure, eo nomine, to all appellate courts.

■ The defendant is not entitled to be discharged as of right where the appellate court determines as a matter of law that the evidence is insufficient to support the judgment of conviction; in such case, unless it appears from the record that it would not be reasonably possible for the state to adduce sufficient evidence at another trial, the court should reverse the judgment and remand the cause for a new trial. State v. Cuezze, Mo., 249 S.W.2d 373, 376[5]; State v. Missey, 361 Mo. 393,

234 S.W.2d 777, 782[13]; State v. Hicks, 326 Mo. 1056, 33 S.W.2d 923, 926[7]; State v. Rawson, Mo., 259 S.W. 421, 422 [4]; State v. Woerth, Mo., 256 S.W. 456, 459[2, 3]; State v. Johnson, Mo., 225 S.W. 961, 965[7]; State v. Griffin, 278 Mo. 436, 212 S.W. 877, 878[3]; State v. Winer, 263 Mo. 356, 172 S.W. 355[3]; and State v. Hall, Mo.App., 265 S.W. 843, 844[4].

Nor does it appear that a remand of the cause would be violative of the doctrine of former jeopardy, which exists in Missouri both by virtue of constitutional provisions and the common law. Art. I, § 19, Const. of Missouri 1945, V.A.M.S.; State v. Toombs, 326 Mo. 981, 34 S.W.2d 61; Ex parte Dixon, 330 Mo. 652, 52 S.W. 2d 181.

Article I, § 19, so far as here pertinent, provides: " * * * if judgment be arrested after a verdict of guilty on a defective indictment or information, or if judgment on a verdict of guilty be reversed for error in law, the prisoner may be tried anew on a proper indictment or information, or according to the law."

■ The general rule is where a defendant, convicted in a criminal prosecution, moves for a new trial, the granting of the motion and putting him on trial a second time is not a violation of his constitutional right not to be put in jeopardy twice for the same offense. State v. Harper, 353 Mo. 821, 184 S.W.2d 601; State v. Austin, 318 Mo. 859, 300 S.W. 1083; State v. Akers, 278 Mo. 368, 213 S.W. 424; State v. Patterson, 88 Mo. 88.

In the early case of State v. Patterson, supra, the defendant had been convicted, but "on his motion for a new trial this verdict was set aside on the ground of the insufficiency of the evidence." On the second trial a plea of double jeopardy was interposed. In disposing of the plea on appeal, the court stated, 88 Mo. loc. cit. 90: "There was no error committed touching this plea. Section twenty-three, article two, of our Bill of Rights does not em-

brace a case of this kind. If a person be acquitted by a jury he could not again for the same offence be placed upon trial; for this would be to put him 'in jeopardy' within the direct terms of the constitution; but where, as here, the defendant moved for a new trial, he 'may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection.' Cooley's Const.Lim. 327–8; State v. Hays, 78 Mo. 600."

In State v. Austin, supra, the defendant at his second trial filed a motion for his discharge because, although he was found guilty at the first trial, his motion for new trial was sustained by the trial court on the ground that it had erred in overruling his demurrers to the evidence. The motion for discharge was overruled and in disposing of the question on appeal the supreme court held, 300 S.W. loc. cit. 1085: "Defendant avers that according to the record he has twice been put in jeopardy for the same offense. However, we do not so interpret the record. The constitutional provision above referred to is controlling. Moreover, notwithstanding the trial court sustained the motion for new trial on the ground that it should have directed a verdict of acquittal, the defendant, in moving and requesting a new trial, waived the right to plead former jeopardy. State v. Sims, 71 Mo. 538; United States v. Ball, 163 U.S. 662, 12[16] S.Ct. 1192, 14[41] L.Ed. 300; Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292, 4 Ann.Cas. 773; 16 C.J. 259; 8 R.C.L. 160." Further, the judgment in the Austin case was reversed and the cause remanded because there was a variance between the allegations of the information and the proof.

The holdings of the Missouri courts are in accord with the weight of authority from other jurisdictions. In 22 C.J.S. Criminal Law § 272, pp. 407–408, the general rule is stated: "Where a new trial was granted on motion of accused, and the verdict and conviction are set aside, he thereby waived his right and is estopped to plead the former conviction as a bar to another trial on the same or a new indictment, even though he has already discharged the fine and sentence originally imposed, and it is immaterial whether the ruling of the court in granting the new trial was correct or erroneous." In 15 Am.Jur. 89–91, Criminal Law, § 427, we find this statement: "It is generally conceded that a person convicted of a crime waives his constitutional protection against being put twice in jeopardy and may be tried again where a verdict against him is set aside and a new trial granted on his motion in the trial court or a conviction is reversed on appeal or error proceedings instituted by him. This is true even though he has served a part of the sentence imposed on him on the first conviction. The same result follows where he merely asks that a judgment against him be vacated though the court goes beyond what he asks and orders a new trial. The defendant may be tried anew on the same indictment for the same offense of which he was convicted. In the application of this rule, the ground on which a new trial is granted is not material. * * * The defendant cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to subsequent jeopardy." Cooley's Constitutional Limitations, 8th Ed., Vol. 1, pp. 690–691, after reciting instances in which the defendant may be retried without violating the rule against double jeopardy, concludes with this statement: " * * * or if, after verdict against the accused, it has been set aside on his motion for a new trial, or on writ of error, or the judgment thereon been arrested—in any of these cases the accused may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection."

In addition to the testimony of the boys, there was this further evidence bearing upon the kind and character of the liquor purchased by the defendant at Mitchell's Liquor Store, some of which the state's

evidence tended to show was given to the boys. Two police officers testified to seeing and questioning the defendant and the boys in the truck at Beuhler Park across from Mitchell's Liquor Store. One, John Martin, testified:

"Q. All the beer you saw, if it was beer, was when you saw him walk out of the store, walk across the highway right in front of you police officers, and put a 'handypack' of beer in the back end of his truck; you said that, didn't you? A. Well, I didn't have a very good look at it, but I heard officer Matthews ask him what it was, and he told him it was beer.

"Q. Sure he told the officer when he asked him, he said 'Beer.' Now, before he got to you police officers, did he make any effort to try to skirt around and not meet you? A. No, sir.

"Q. He walked up to where you were, with his beer, didn't he? A. Yes, sir."

Ben Matthews, the other police officer, on the same subject matter testified:

"Q. And he walked along there, he was carrying a package of six cans of beer, wasn't he? A. Well, it looked like a 'six-pack.'

"Q. 'Six-pack'? A. Under his arm, I believe, when he came up and set it over in the truck back of the cab.

"Q. You could see; that's what it looked like to you? A. Yes, sir; I would say beer, saw the carton there.

"Q. Well, he didn't make any effort to put it behind him, or anything, walked right up to where you were, just walked up and drew up and threw it in the back? A. He set it right up in the corner in the cab.

"Q. Oh, in the cab, or in the back end. A. In the back of the cab, in the truck bed, up against the corner.

"Q. And when you saw Mr. Patton, did you ask him anything about the beer he was putting in his truck, there? A.

No, I believe I said something to him about it, he said—I believe he did mention something about a carton of beer. I asked him what he had and he said, 'A carton of beer.'

"Q. When you asked him he told you a carton of beer? A. Yes, sir."

Evidence on behalf of defendant consisted of character witnesses and his own testimony. He denied that he gave the boys anything to drink at any time during the evening, but admitted he bought beer at Mitchell's Liquor Store while the boys waited across the road in the truck. On this score he testified:

"Q. (By Mr. Marshall) Let me ask you this: did you go to this liquor store? A. Yes, I stopped across the road from it.

"Q. Okay. And what did you do then? A. I didn't say anything, I just got out and I walked in and bought myself a 'handypack' of beer.

"Q. What kind of beer did you buy? A. Falstaff. So I came back and on the way back I saw this police car had come up meanwhile. So I walked over and put my beer in the back of the truck * * *."

The police officers checked the ownership of the truck and interrogated the boys and the defendant but did not arrest or detain them. Eventually the defendant drove to the vicinity of where the boys lived and they got out and walked the rest of the way home. The defendant contended this was done directly after the police officers departed. On the other hand, the boys testified it was considerably later and after they had consumed the beer the defendant purchased at Mitchell's Liquor Store.

■ While it is apparent that a quantitative analysis to determine the alcoholic content of the beer is out of the question, we are not prepared to say in these circumstances that this is the only means by which the state can make its case. Ac-

cordingly, the cause should be remanded for a new trial.

Other charges of error need not be determined, since they can be avoided and are not likely to recur at another trial.

The judgment is reversed and the cause remanded.

All concur.